Filed 12/8/22  R & J Sheet Metal v. Centria CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| R & J SHEET METAL, INC., | B304148 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC596858) |
| v. | |
| CENTRIA, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

Law Offices of Alex P. Aghajanian, Alex P. Aghajanian, Gary P. Simonian; Benedon & Serlin, Gerald M. Serlin and Melinda W. Ebelhar for Plaintiff and Appellant.

Sidley Austin, Jack S. Yeh, David R. Carpenter, Anna Tutundjian and Nicole M. Baade for Defendant and Respondent.

_____

Plaintiff and appellant R & J Sheet Metal, Inc. (R&J) appeals an order granting defendant and respondent Centria, Inc. doing business as Centria Architectural Systems' (Centria's) renewed motion to dismiss based on a Pennsylvania forum selection clause in a dealer agreement between Centria, a manufacturer, and one of Centria's authorized dealers, defendant Joseph Karcig, Inc., doing business as Architectural Systems, Inc. (ASI).[1] Briefly summarized, R&J's cause of action against Centria is predicated on allegations that Centria violated a purchase contract between Centria and ASI by failing to provide a 20-year warranty for certain goods that ASI in turn supplied to R&J, and that R&J is a third party beneficiary of that purchase contract.

On appeal, R&J contends the trial court erred in granting Centria's renewed motion because the motion was not supported by new or different facts or circumstances as required by Code of Civil Procedure section 1008, subdivision (b);[2] and the court lacked the authority, on its own motion, to reconsider its prior ruling denying Centria's initial motion to stay or dismiss. Regarding the trial court's power to reconsider its previous ruling on its own motion, R&J maintains the court lacked that authority because it reconsidered the applicability of the forum selection

---

[1] ASI is not a party to this appeal.

[2] Code of Civil Procedure, section 1008 subdivision (b) provides in pertinent part that "[a] party who originally made an application for an order which was refused . . . may make a subsequent application for the same order upon new or different facts, circumstances, or law . . . ." (Code Civ. Proc., § 1008, subd. (b).) Undesignated statutory citations are to the Code of Civil Procedure.

clause in response to Centria's renewed motion and the court relied on evidence accompanying the renewed motion that Centria had not, but purportedly could have, submitted with the initial motion.

We conclude the trial court did not err in reconsidering its prior ruling. In *Williamson v. Mazda Motor of America, Inc.* (2012) 212 Cal.App.4th 449 (*Williamson*), Division Three of the Fourth District held that one of the statutes governing inconvenient forum motions, section 410.30, confers upon a trial court the discretion to reconsider its prior order denying a motion to stay or dismiss for inconvenient forum in response to a renewed motion that is based on previously unsubmitted evidence, regardless of whether the renewed motion satisfies section 1008. Because R&J has not advanced a persuasive reason to disagree with *Williamson*, we adhere to that decision in accordance with the principles of stare decisis. Furthermore, we reject R&J's assertion that *Williamson* should not apply to the instant case, given the record shows that R&J's failure clearly to identify the contract upon which its third party beneficiary theory is based initially caused the trial court mistakenly to believe the dealer agreement's forum selection clause is inapplicable.

Turning to the merits of the dismissal order, we conclude the forms that R&J claims constitute the relevant contract between ASI and Centria are part of the same transaction as the dealer agreement that contains the Pennsylvania forum selection clause. Accordingly, the forum selection clause from the dealer agreement governs ASI's right, and, by extension, R&J's right qua asserted third party beneficiary, to bring suit against Centria. We thus affirm.

3

## PROCEDURAL BACKGROUND[3]

Because the genesis of Centria's renewed motion is important to our conclusion that section 410.30 authorized the trial court to reconsider its prior ruling, our discussion of the procedural history of the motion is necessarily detailed.

### 1. *First amended complaint*

On May 23, 2019, R&J filed its first amended complaint, averring claims arising out of a project at the Port of Long Beach, for which R&J claims to have purchased material and provided labor for the installation of sheet metal components.[4] R&J alleged a single cause of action against Centria—denominated as "breach of contract [¶] (third party beneficiary)." (Boldface & capitalization omitted.)

On or about April 23, 2014, R&J made a written purchase order to ASI for "specific products and accompanying paint coatings" and a "20-year coastal finish warranty" that was

_____

[3] We derive our Procedural Background in part from undisputed aspects of the trial court's order of dismissal and admissions made by the parties in their briefing. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling]; Standards of Review, *post* [noting that the trial court's orders and judgments are presumed correct]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 (*Artal*) [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)

[4] This section summarizes the pertinent allegations from the first amended complaint. We express no opinion as to the veracity of these averments.

required for the project. Centria was a manufacturer of certain sheet metal products, ASI was Centria's exclusive authorized agent "for the territory of Long Beach, California," and "[i]n 2014," ASI and Centria "entered into a written contract in connection with [R&J's] aforementioned purchase order." In this contract, Centria agreed to "1) manufacture all of the goods set forth in [R&J's] purchase order, 2) coat certain of those goods with the requested finish, 3) provide their standard manufacturer's warranty for the finish for the period of 20 years, as advertised, and deliver the finished goods and warranty to the project." In exchange, ASI agreed to pay Centria for the goods that R&J had ordered.

Centria was "aware of the project's specifications as it related to the goods and warranty" and "understood" that R&J "had ordered the products and standard manufacturer's warranty for the project through [Centria's] authorized dealer, [ASI], as set forth in the plans and specifications for the project." Centria breached its contract with ASI by failing to provide the standard 20-year warranty for the goods delivered.

## 2. *Centria's initial motion to stay or dismiss*

We first summarize the parties' arguments made in connection with Centria's initial motion to stay or dismiss, and thereafter discuss the trial court's consideration of those arguments and its ruling denying that motion.

### A. *The parties' arguments*

On July 17, 2019, Centria filed a motion to stay or dismiss the action pursuant to sections 410.30 and 418.10. Centria argued that "[t]he operative dealer agreement that governs all business dealings between Centria and its authorized dealer,

5

ASI" (2005 dealer agreement), "to which [R&J] . . . alleges to be a third party beneficiary," contains the following forum selection clause: "Any action brought under, as a result of or relating to this Agreement shall be instituted and litigated in the courts of the Commonwealth of Pennsylvania located in Allegheny County, Pennsylvania. Each party irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds, . . . and consents to the jurisdiction of said courts."

Centria argued that the 2005 dealer agreement applied to "all disputes arising from the business dealings between Centria and ASI, including the transactions that underlie this dispute." Centria contended that even though R&J did not sign the 2005 dealer agreement, R&J was bound by the agreement because R&J's "allegations against Centria are entirely based on its position that the Agreement was entered into for [R&J's] benefit." Accompanying the motion was a declaration from Centria's attorney who purported to authenticate a document submitted with the motion as a "true and correct copy" of this agreement between Centria and ASI.

R&J filed evidentiary objections to this declaration, including the paragraph in which Centria's attorney authenticated the 2005 dealer agreement, on the ground, inter alia, that his testimony in that regard lacked foundation. In its opposing brief, R&J stated: "CENTRIA did not demonstrate that the 2005 dealer contract is the operative agreement or that R&J was an intended beneficiary of it. To the contrary, R&J contended that, in addition to being a consumer of CENTRIA's product that was advertised to come with a 20-year finish warranty, it was also the beneficiary of *a 2014 agreement between CENTRIA and ASI*." (Italics added.)

6

R&J served its opposition brief and objections by mail, rather than by personal or overnight service. In the dismissal order discussed in greater detail in Procedural Background, part 3.B, *post*, the trial court found R&J's service of these documents was "improper" because service was not effected "in a manner reasonably calculated to ensure delivery by the next business day," but instead "gave [Centria] fewer than three days to address the arguments raised and prepare its reply brief." R&J does not dispute this finding on appeal.

In its reply, Centria asserted that R&J's "claim is premised on a complete sham." More specifically, Centria argued that to avoid the forum selection clause in the 2005 dealer agreement, R&J invoked a "phantom '2014 Agreement' between Centria and ASI" that it "ha[d] not produced despite ample opportunity to do so with the First Amended Complaint and in its Opposition."[5] Centria reiterated its position that the 2005 dealer agreement is "the only operative agreement that governed all business dealings between Centria and its authorized dealer, ASI[,] at the time of the alleged transactions, to which [R&J] purports to be a third-party beneficiary . . . ."

---

[5] On appeal, neither party sets forth the status of discovery at the time R&J named Centria as a defendant in this case. We note that in its reply to R&J's opposition to the renewed motion to dismiss or stay, Centria asserted: "Centria's counsel understands that [R&J] issued a subpoena to Centria last year and obtained Centria's documents relating to the April 2014 [purchase] order. [R&J] also had an opportunity to obtain such documents directly from ASI."

7

B.     *The trial court's consideration of Centria's original motion to dismiss or stay and the court's denial of that motion*

The trial court issued a tentative ruling indicating it intended to sustain R&J's evidentiary objections to trial counsel's testimony purporting to authenticate the 2005 dealer agreement, and to deny Centria's motion. The tentative ruling also stated that Centria "did not submit competent evidence establishing that the Dealer Agreement is the contract that [R&J] seeks to enforce as a third-party beneficiary in this action," and that Centria had not submitted competent evidence that the 2005 dealer agreement was "the only operative agreement between [Centria] and ASI for the claims at issue" in the first amended complaint. The ruling further stated that the allegations of the first amended complaint "do not support [Centria's] contention that [R&J] is suing as a third-party beneficiary of the Dealer Agreement since [R&J] alleges that [Centria] and ASI entered an agreement for the benefit of [R&J] in 2014, not 2005." In sum, the court's tentative decision rested on two premises: (1) Centria's failure to authenticate what Centria believed was the operative agreement underlying R&J's third party beneficiary claim; and (2) R&J had pleaded that Centria and ASI entered into a 2014 agreement for the benefit of R&J.

At the hearing on Centria's motion, counsel for Centria asked the court to continue the hearing for several weeks to allow Centria, inter alia, to "submit a declaration by . . . an officer of the company[ ] authenticating the 2005 contract . . . ." Centria's attorney further argued that the opposition had not been properly served and that his team "had basically a day and a half" to prepare the reply submission. The court denied the

8

request to continue the hearing.  When counsel for Centria stated that he understood the ruling on the motion to be without prejudice, the trial court replied:  "My ruling is my ruling, and the California Code of Civil Procedure tells you what you can do.  It is my ruling, and it is the ruling of the court.  If there's a way that you want to present it to me, I'm not going to tell you how to practice law, but this is my ruling.  [¶] . . . [¶]  It's not without prejudice.  It's my ruling."

On November 14, 2019, the trial court adopted its tentative decision as its final ruling, thereby denying Centria's motion to stay or dismiss.

### 3.    *Centria's renewed motion to stay or dismiss*

Again, we first summarize the parties' arguments and then discuss the court's ruling on the renewed motion.

#### A.    *The parties' arguments*

On November 21, 2019, Centria filed a renewed motion to stay or dismiss pursuant to sections 410.30, 418.10, and 1008.  Centria argued the trial court had denied Centria's original motion because R&J's opposition "ambiguously" and "suspiciously" referred to a " '2014 Agreement' " between Centria and ASI, an agreement R&J "still ha[d] not yet proffered, produced or even articulated."  Centria asserted that it executed a dealer agreement with ASI in August 2014 that contains the same forum selection clause as the one in the 2005 dealer agreement (2014 dealer agreement), but further asserted the 2014 dealer agreement postdates ASI's purchases from Centria that are the subject of this appeal.

In connection with its renewed motion, Centria submitted the declaration of Centria's western distribution manager,

9

Ronald Laramie, who authenticated the 2005 and 2014 dealer agreements, which agreements Centria submitted with the motion.[6] Laramie attested that Centria uses a standard dealer agreement that "is intended to be a master agreement that governs all of the material terms and conditions of any transactions and business dealings between Centria and each of its authorized dealers," including ASI. Laramie also declared that the 2005 dealer agreement was the only dealer agreement between ASI and Centria that was operative in the first quarter of 2014, and that it was Laramie's "understanding that ASI purchased" from Centria in the first quarter of 2014 "certain of th[e] materials" that R&J had ordered from ASI.

In its opposition, R&J argued that Centria's renewed motion did not comply with section 1008 because it was not based on new or different facts that were not available at the time of the original filing, but instead was being used to correct defects in the original motion. R&J further asserted that its cause of action against Centria was not based on a dealer agreement, but instead "was rooted from R&J's purchase order . . . ." R&J contended that "CENTRIA's understanding was that R&J submitted a purchase order to ASI for CENTRIA products in connection with a public works projects [*sic*] and that, in turn, ASI purchased those products from CENTRIA to deliver to R&J." "Thus," according to R&J, "ASI and CENTRIA did, in fact, enter into an agreement in 2014 for the benefit of R&J in connection with R&J's purchase order."

---

[6] We describe the relevant provisions from the 2005 dealer agreement in Discussion, part C, *post*.

In reply, Centria submitted the declaration of Centria's regional distribution manager, Robert W. Rutherford. Rutherford attested that as a general matter, when an authorized dealer submits a purchase order to Centria, Centria issues an order acknowledgement form that confirms details such as materials, price, and shipping instructions. Per Rutherford, Centria's acknowledgement forms supersede "anything stated by the dealer in its purchase order or otherwise." Rutherford further declared that "ASI's purchase order and Centria's acknowledgment also are always subject to the Dealer Agreement then in effect between ASI and Centria."

Rutherford authenticated the following documents that were attached to his declaration: Centria's February 28, 2014 quotation to ASI for the materials contemplated by R&J for the project; ASI's March 19, 2014 preliminary purchase order to Centria for the materials that R&J later ordered from ASI in April 2014; and two April 29, 2014 order acknowledgment forms from Centria to ASI relating to R&J's order. The "Terms and Conditions of Sale" recited in the purchase order acknowledgment forms provide that "[t]he contract represented by this acknowledgement shall be governed by the laws of Pennsylvania." (Underscoring & some capitalization omitted.) The two purchase order acknowledgment forms do not contain a forum selection clause.

In its reply brief, Centria asserted that R&J's "intentional and continuing" "refus[al] to produce or identify with specificity" the contract on which it bases its third party beneficiary claim had "led Centria and this Court down a rabbit hole trying to guess the form of the foundational contract at issue . . . ." Centria argued that R&J's opposition to the renewed motion was "the

11

first time" that R&J indicated that "the basis for its claim is simply ASI's purchase of certain materials."

B.    *The trial court granted Centria's renewed motion*

On December 12, 2019, the trial court heard and granted Centria's renewed motion, and entered an order dismissing the action as to Centria pursuant to section 410.30.

In its detailed written ruling on the renewed motion, the court explained it had denied Centria's original motion because Centria failed to establish the existence of a forum selection clause, given that Centria had not "submit[ted] competent evidence establishing that the 2005 Dealer Agreement is the contract [R&J] seeks to enforce as a third-party beneficiary in the first amended complaint . . . ." The court also found that, for the purposes of a renewed motion under section 1008, subdivision (b), Centria had demonstrated "new or different facts to warrant a subsequent application for the same order." In particular, the court observed that: (1) Centria "submitted a declaration indicating that this renewed motion [was] necessitated by [R&J's] insistence that a 2014 Agreement between [Centria] and ASI supersedes the express forum selection clause of the 2005 Dealer Agreement and that [R&J's] opposition to [Centria's] initial motion argued that this 2014 Agreement controls without alleging the terms of the agreement or whether it too contained a forum selection clause"; (2) Centria "submitted evidence suggesting the existence of a 2014 Dealer Agreement between [Centria] and ASI, which does contain the same forum selection clause as the 2005 Dealer Agreement"; and (3) Centria "submitted evidence that [R&J's] improperly served and untimely opposition materially prejudiced [Centria's] ability to prepare a reply to the original motion and present the new facts asserted in

12

this renewed motion previously." The court further "note[d] that it ha[d] the inherent discretion to consider a renewed motion, without requiring new facts or circumstances . . . ."

On the merits, the trial court concluded that Centria had established the existence of a forum selection clause that applies to R&J. Specifically, the court found that Centria had "submitted evidence establishing that the 2005 Dealer Agreement is the contract that [R&J] seeks to enforce as a third-party beneficiary in this action . . . ." The court further found that the forum selection clause in the 2005 dealer agreement "applies to all disputes arising from the business transactions between [Centria] and ASI." Additionally, the court concluded that R&J "did not meet its burden of demonstrating that either the forum selection clause is unfair or unreasonable or that Pennsylvania is an unsuitable alternative forum."

R&J appealed the order of dismissal on February 7, 2020.

## STANDARDS OF REVIEW

We review de novo whether a trial court is authorized to, on its own motion, reconsider a prior ruling. (See *Williamson, supra*, 212 Cal.App.4th at pp. 453–455 [reviewing de novo whether section 410.30 authorized the trial court to reconsider an inconvenient forum ruling on its own motion]; see also *People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 120 [holding that matters concerning "the trial court's statutory authority present[ ] question[s] of law, which we review de novo"].)

We review de novo the trial court's legal conclusion that the forum selection clause at issue applies to R&J's action against Centria, given that our resolution of this issue does not require "any assessment of conflicting extrinsic evidence." (See *Intershop*

13

*Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 196, 199 (*Intershop Communications AG*); Discussion, part C, *post* [deciding this issue without resolving conflicting evidence].)

Furthermore, " '[i]t is well settled that all presumptions and intendments are in favor of supporting the judgment or order appealed from, and that the appellant has the burden of showing reversible error, and in the absence of such showing, the judgment or order appealed from will be affirmed.' [Citations.]" (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 104.) Thus, " ' "it is the appellant's responsibility to affirmatively demonstrate error[,]" ' " and " ' "review is limited to issues which have been adequately raised and briefed." ' [Citation.]" (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492.) " '[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' [Citation.]" (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*).) The appellant bears this burden of rebutting the presumption of correctness accorded to the trial court's decision, regardless of the applicable standard of review. (See *Los Angeles Unified School Dist.*, at p. 492 [noting that these principles apply to " ' "an appeal from any judgment" ' "]; see also *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368, 399 [indicating that an appellant must affirmatively show the trial court erred even if the de novo standard of review applies].)

Additionally, " '[i]f the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon

which the lower court reached its conclusion.'  [Citation.]"
(*Estate of Sapp*, *supra*, 36 Cal.App.5th at p. 104.)

## DISCUSSION

R&J contends the trial court lacked authority to reconsider its ruling denying Centria's initial forum non conveniens motion. R&J further argues that, even if the court had the power to revisit whether R&J's action against Centria should be heard in California, the "court erred in finding R&J's third-party beneficiary claim was subject to . . . the 2005 . . . dealership agreement[ ] and thus was bound by the forum-selection clause" included therein.  We reject these arguments for the reasons set forth in Discussion, parts B–C, *post*.

Furthermore, we note R&J does not contest the trial court's rulings that (1) the provision at issue from the 2005 dealer agreement is a mandatory forum selection clause, and (2) R&J "did not meet its burden of demonstrating that either the forum selection clause is unfair or unreasonable or that Pennsylvania is an unsuitable alternative forum."[7]  Furthermore, R&J does not

---

[7] We explain in Discussion, part B.1, *post*, that a mandatory forum selection clause expressly mandates litigation exclusively in a particular forum, and that a court will usually enforce a mandatory forum selection clause unless the plaintiff can show that application of the clause is unfair or unreasonable.

Further, in its reply brief, R&J asserts for the first time that "[t]he grant of Centria's motion to dismiss effectively leaves R&J without a forum in which to pursue its claims against Centria based on the statute of limitations in Pennsylvania, the contractual forum state."  To the extent R&J is impliedly challenging the trial court's ruling that R&J did not show the

argue that upon deciding to enforce the forum selection clause, the trial court should have stayed—rather than dismissed—the action. Accordingly, R&J leaves undisturbed the trial court's rulings that: (1) the 2005 dealer agreement contains a mandatory forum selection clause; (2) R&J "did not meet its burden of demonstrating that either the forum selection clause is unfair or unreasonable or that Pennsylvania is an unsuitable alternative forum"; and (3) dismissal, rather than a stay of the proceedings, was the appropriate remedy for R&J's failure to bring suit in the proper forum. (See *Yu v. University of La Verne* (2011) 196 Cal.App.4th 779, 787 (*Yu*) [" ' "A judgment or order of the lower court is *presumed correct*." ' "]; *Estate of Sapp*, *supra*, 36 Cal.App.5th at p. 104 [holding that " 'the appellant has the burden of showing reversible error' "].)

Before proceeding to the merits of this appeal, we address two requests R&J makes in its reply brief: (1) that we strike certain portions of Centria's respondent's brief, and (2) that we permit R&J to submit supplemental briefing.

## A. We Reject R&J's Procedurally Improper Requests to (1) Strike Portions of Centria's Respondent's Brief and (2) Submit Supplemental Briefing

R&J asks us to strike portions of the respondent's brief because Centria supposedly refers to matters outside the

---

forum selection clause is unfair or unreasonable or that Pennsylvania is an unsuitable forum, R&J fails properly to raise any such claim of error. (See *Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6 ["Arguments presented for the first time in an appellant's reply brief are considered waived."].)

appellate record and allegedly raises issues that (a) were not decided by the trial court, and (b) are outside the scope of this appeal.  Further, R&J states that, "[i]n the event the Court is considering affirming on th[e] basis" that Centria has shown that the trial court's error was harmless because R&J's underlying breach of contract claim lacks merit, "R&J requests the opportunity, pursuant to Government Code section 68081, to fully brief the question of whether there is an issue of fact regarding Centria's contractual obligations."

We deny these requests because R&J should have filed a motion or application seeking such relief.  (See *SCC Acquisitions, Inc. v. Central Pacific Bank* (2012) 207 Cal.App.4th 859, 861, 863 [rejecting a respondent's "requests to dismiss and to strike portions of appellants' opening brief because the [respondent] did not file separate motions seeking such relief"]; see also Cal. Rules of Court, rule 8.54 [governing motions]; *id.*, rule 8.50 [governing applications].)  A reply brief is not the proper occasion to make these requests, especially considering that R&J deprived Centria of the opportunity to respond to R&J's contentions in writing.  (See *id.*, rule 8.200(a)(4) ["[Aside from appellant's opening brief, respondent's brief, and appellant's reply brief, n]o other brief may be filed except with the permission of the presiding justice."].)  In any event, we observe that R&J's procedurally defective entreaty for leave to brief the harmless error issue is moot because R&J failed to establish the trial court erred in dismissing the action pursuant to the 2005 dealer agreement's forum selection clause.  (See Discussion, parts B–C, *post*.)

17

**B.** **Section 410.30 Authorized the Trial Court to Dismiss Centria from the Action Regardless of Whether Centria's Renewed Motion Satisfied the Requirements of Section 1008**

R&J argues the trial court lacked authority to reconsider its prior order denying Centria's initial forum non conveniens motion because: (1) Centria's renewed motion did not comply with the requirements of section 1008; (2) "the court did not act *sua sponte*," given that "it is obvious the court's impetus in reconsidering its previous order was the motion filed by Centria"; and (3) "the trial court relied on the additional evidence before it on the renewed motion to dismiss which was not before it on the original motion."

As we explain below, section 410.30 confers upon a trial court the discretion to reconsider its prior order denying a motion to stay or dismiss for inconvenient forum in response to a renewed motion that is based on previously unsubmitted evidence, regardless of whether the renewed motion satisfies section 1008. The trial court's decision to reconsider its ruling denying Centria's original motion is supported by *Williamson*, which held that "section 410.30, subdivision (a) grants a trial court independent authority to determine whether California is a convenient forum" based on evidence not previously presented to the court, "even if a party's forum non conveniens motion does not otherwise satisfy the requirements of section 1008 for reconsideration of a prior order or renewal of an earlier motion." (See *Williamson*, *supra*, 212 Cal.App.4th at pp. 452–454.)

R&J insists we should not follow *Williamson*, or, in the alternative, we should hold that *Williamson* and a decision upon which *Williamson* relies, to wit, *Britton v. Dallas Airmotive, Inc.*

18

(2007) 153 Cal.App.4th 127, apply only to "traditional" forum non conveniens motions that do not seek enforcement of mandatory forum selection clauses.  We reject R&J's arguments, along with the arguments advanced by the dissent in support of R&J's position, and hold that section 410.30 authorized the trial court to reconsider its denial of Centria's first forum non conveniens motion.

>1. *Motions to enforce forum selection clauses are treated as special forum non conveniens motions governed by section 410.30*

"In California, the procedure for enforcing a forum selection clause is a motion to stay or dismiss for forum non conveniens pursuant to Code of Civil Procedure sections 410.30 and 418.10 [citation], but a motion based on a forum selection clause is a special type of forum non conveniens motion.  The factors that apply generally to a forum non conveniens motion do not control in a case involving a mandatory forum selection clause. [Citations.]  [¶]  If there is no mandatory forum selection clause," that is, a provision that "expressly mandate[s] litigation exclusively in a particular forum," "a forum non conveniens motion 'requires the weighing of a gamut of factors of public and private convenience . . . .' [Citation.]  However if there *is* a mandatory forum selection clause, the test is simply whether application of the clause is unfair or unreasonable, and the clause is usually given effect.  Claims that the previously chosen forum is unfair or inconvenient are generally rejected." (See *Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 358–359.)

"Under a traditional forum non conveniens analysis," that is, one that does not involve a mandatory forum selection clause,

"[t]he defendant, as the moving party, has the burden of proof."
(See *Intershop Communications AG*, *supra*, 104 Cal.App.4th at
pp. 196, 198.) "In contrast, in cases with a [mandatory]
contractual forum selection clause, the burden of proof is on the
plaintiff, the party resisting the motion," to "show[ ] that
enforcement of the clause would be unreasonable under the
circumstances of the case."[8] (See *Intershop Communications AG*,
at pp. 196, 198.)

---

[8] R&J points out that the Court of Appeal in *Trident Labs,
Inc. v. Merrill Lynch Commercial Finance Corp.* (2011)
200 Cal.App.4th 147, stated that a motion seeking enforcement of
a forum selection clause is " 'not a forum non conveniens
motion.' " (Quoting *Trident Labs, Inc.*, at p. 156.) When this
quotation is read in context, however, it is apparent the *Trident
Labs, Inc.* court was merely pointing out that a motion to stay or
dismiss based on a mandatory forum selection clause is governed
by different principles than a traditional forum non conveniens
motion. (See *Trident Labs, Inc.*, at p. 156 [citing *Intershop
Communications AG*, *supra*, 104 Cal.App.4th at pp. 196, 198 for
this proposition].) In fact, *Trident Labs, Inc.* tacitly
acknowledged that section 410.30 governed the defendant's
motion to enforce the mandatory forum selection clause in that
case, and observed that this statute "is a codification of the
doctrine of forum non conveniens . . . ." (See *Trident Labs, Inc.*,
at pp. 150, 153–155.)

20

*2.* Williamson *held that section 410.30 empowers a trial court, on its own motion, to determine whether California is a convenient forum in response to a party's renewed forum non conveniens motion that relies on evidence not previously submitted to the court, regardless of whether the renewed motion satisfies the requirements of section 1008*

In *Williamson*, the plaintiffs filed a products liability action that arose out of a vehicle collision in Utah. (See *Williamson, supra*, 212 Cal.App.4th at pp. 451–452.) At the outset of the action, the defendants, distributors and manufacturers of the minivan the plaintiffs were riding in at the time of the accident, moved to stay or dismiss on the ground that Utah was a more convenient forum in which to litigate the action than California. (See *id.* at pp. 452, 454.) The trial court denied the motion, reasoning that "the minivan was now located in California, counsel for all parties were in this state, and since 'the real crux of this case' would be a 'battle of the experts' over the vehicle's design and manufacture, California was a convenient forum for the parties' experts." (*Id.* at p. 452.) The action was later assigned to another trial judge. (*Ibid.*)

When discovery neared completion, the defendants moved for reconsideration of the forum non conveniens motion based on "the evidence presented in support of the original motion plus new documentation." (See *Williamson, supra*, 212 Cal.App.4th at pp. 452, 454.) The plaintiffs opposed the motion, "citing section 1008 and arguing there were no new facts, circumstances, or law warranting reconsideration of the forum non conveniens issue." (*Williamson*, at p. 452.) The trial judge to whom the case had been reassigned granted the motion and stayed the action.

21

(*Ibid.*)  "She cited several grounds for her authority to consider the renewed motion, including section 410.30.  On the merits, [the court] found that, while it had initially appeared th[e] case primarily concerned vehicle design and crashworthiness, with discovery nearly complete," it became apparent that causation "would also be a major issue at trial," and that the resolution of that issue "would involve the testimony of the numerous Utah accident eyewitnesses."  (See *ibid.*)

On appeal, the *Williamson* court rejected the plaintiffs' argument that the trial court had "erred in staying the California action on [its] own motion because [it] did not find the prior ruling was an abuse of discretion based on the evidence originally presented" in support of the initial forum non conveniens motion. (See *Williamson*, *supra*, 212 Cal.App.4th at pp. 453–455.)  The Court of Appeal observed that "[s]ection 410.30, subdivision (a) states, 'When a court upon motion of a party or *its own motion* finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just.' "  (*Williamson*, at p. 453, quoting § 410.30, subd. (a).) The appellate court held that "the plain language" of the statute conferred upon the trial court "the authority to reconsider on [its] own motion whether California was a convenient forum."  (See *Williamson*, at p. 455; see also *Green v. State of California* (2007) 42 Cal.4th 254, 260 (*Green*) ["We must look to the statute's words and give them their usual and ordinary meaning.  [Citation.]  The statute's plain meaning controls the court's interpretation unless its words are ambiguous."].)

The Court of Appeal cited *Britton* in support of its construction of section 410.30, subdivision (a).  (*Williamson*,

*supra*, 212 Cal.App.4th at pp. 453–454.) The *Williamson* court acknowledged that "*Britton* focused on the interplay between sections 418.10 and 410.30" in deciding "whether [a] renewed motion" filed nearly a year after the trial court denied the first motion "was timely."[9] (See *Williamson* at pp. 453–454.) Nevertheless, according to the *Williamson* court, *Britton* was instructive because that prior decision "acknowledged section 410.30, subdivision (a) grants a trial court independent authority to determine whether California is a convenient forum even if a party's forum non conveniens motion does not otherwise satisfy the requirements of section 1008 for reconsideration of a prior order or renewal of an earlier motion." (See *Williamson*, at p. 454.)

The *Williamson* court also relied upon a passage from *Britton* which stated that deeming the renewed motion therein to be timely under section 410.30 was " 'a reasonable rule because it may be necessary to conduct discovery to develop the factual underpinnings of a forum non conveniens motion' [citation], and 'to retain a case for the entire duration of the litigation because the lack of connection to California was unclear at the outset

---

[9] Section 418.10, subdivision (a) provides in pertinent part: "A defendant, on or before the last day of his or her time to plead or within any further time that the court may for good cause allow, may serve and file a notice of motion . . . [¶] . . . [t]o stay or dismiss the action on the ground of inconvenient forum" (§ 418.10, subd. (a)(2)), whereas section 410.30, subdivision (b) provides: "The provisions of Section 418.10 do not apply to a motion to stay or dismiss the action by a defendant who has made a general appearance." (§ 410.30, subd. (b).) We discuss *Britton* in further detail in Discussion, part B.3, *post*.

would impair the state's interest in avoiding burdening courts and potential jurors with litigation in which the local community has little concern' [citation]." (*Williamson*, *supra*, 212 Cal.App.4th at p. 454.) *Williamson* remarked that "[t]his reasoning equally applies to the circumstances presented in this case. Merely because a defendant brings an unsuccessful forum non conveniens motion shortly after a case is filed should not deprive the trial court of its independent statutory authority to subsequently reconsider the issue once the facts of the litigation are more fully developed." (*Ibid.*)

In sum, the *Williamson* court held that section 410.30, subdivision (a) permitted the trial court, on its own motion, to reconsider its prior forum non conveniens ruling regardless of whether the defendant's successive motion complied with section 1008, and even though the court's ruling was prompted by the successive motion and the court had relied on new evidence that was not included in the initial unsuccessful motion. (See *Williamson*, *supra*, 212 Cal.App.4th at pp. 451, 453–456.) The trial court's citation of section 410.30 as authority to consider the second motion in *Williamson* was sufficient to invoke the court's statutory "authority to reconsider on [its] own motion whether California was a convenient forum" (see *Williamson*, at pp. 452, 455), and the trial court in this case likewise cited this statute in support of its order of dismissal.

*Williamson* thus disposes of R&J's arguments that section 1008 barred the trial court in the instant case from dismissing the action in response to Centria's renewed motion and in reliance on new evidence not included in Centria's first motion. In the remainder of Discussion, part B, we discuss R&J's

24

and the dissent's arguments that we should decline to apply *Williamson*'s holding to this case.[10]

> 3. *R&J does not persuade us that* Williamson *was wrongly decided*

Division Three of the Fourth Appellate District decided *Williamson*. (*Williamson*, *supra*, 212 Cal.App.4th at p. 449.) "We, of course, are not bound by the decision of a sister Court of Appeal. [Citation.] But '[w]e respect stare decisis, however,

_____

[10] Because *Williamson* held that section 410.30, subdivision (a) empowers courts to reconsider whether California is a convenient forum notwithstanding a party's failure to comply with section 1008 (see *Williamson*, *supra*, 212 Cal.App.4th at p. 454), we do not address R&J's or the dissent's contention that the trial court lacked the inherent authority to reconsider its prior ruling. (See Dissent, part B, *post* [asserting the trial court lacked the inherent authority to reconsider its prior ruling].) (See also *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1096, 1102–1103, 1107 [holding a trial court's inherent authority, on its own motion, to reconsider prior rulings is "derived from the California Constitution"] (*Le Francois*); *Williamson*, at p. 453 [holding that *Le Francois* did not warrant reversal of the trial court's ruling because *Le Francois* did not address the court's statutory powers under § 410.30, subd. (a)].)

Additionally, although *Williamson* affirmed an order *staying* an action on the ground of forum non conveniens and not an order that dismissed an action on that basis (see *Williamson*, *supra*, 212 Cal.App.4th at pp. 451, 456), R&J does not claim that this distinction has any bearing on the trial court's authority to reconsider its prior ruling in the instant case. Furthermore, we note that section 410.30, subdivision (a) provides that a trial court may "stay *or dismiss*" a matter on "its own motion . . . ." (See § 410.30, subd. (a), italics added.)

which serves the important goals of stability in the law and predictability of decision. Thus, we ordinarily follow the decisions of other districts without good reason to disagree.' [Citation.]" (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1529.) For the reasons discussed below, we find that R&J has not convinced us to disagree with *Williamson*.

R&J's principal contention is that we should decline to follow *Williamson* because it misconstrued a Court of Appeal decision that interpreted section 410.30, to wit, *Britton*. (See also *Williamson*, *supra*, 212 Cal.App.4th at pp. 453–454 [relying on *Britton* in its analysis].) *Britton* arose out of a helicopter crash in Idaho. (*Britton*, *supra*, 153 Cal.App.4th at p. 130.) The helicopter pilot injured in the crash, the pilot's wife, the entity that owned the helicopter, and a principal of that entity brought suit against two entities that serviced the helicopter engine, along with the successor of the manufacturer of the engine. (*Ibid.*) Shortly after the action was filed, one of the defendants that serviced the engine moved to stay or dismiss the action for forum non conveniens, and the other two defendants joined that motion. (*Ibid.*) The trial court denied this initial motion. (*Ibid.*)

Thereafter, the three defendants subsequently answered the complaint, the plaintiffs named a new defendant that also answered, and the trial court granted an unopposed motion for summary judgment terminating the plaintiffs' claims against the defendant that filed the initial forum non conveniens motion. (See *Britton*, *supra*, 153 Cal.App.4th at p. 131.) More than a year after the original forum non conveniens motion was filed, one of the defendants renewed the motion, and the other two defendants joined that renewed motion. (See *ibid.*) The trial

26

court granted the motion and stayed the action pending the initiation and conclusion of litigation in Idaho. (*Ibid.*)

On appeal of the order on the renewed forum non conveniens motion, the plaintiffs argued the motion was untimely under section 418.10 because the defendants filed it "a year after most defendants answered the complaint." (See *Britton, supra*, 153 Cal.App.4th at pp. 130–132.) The *Britton* court rejected this argument in part because the appellate court held that section 410.30 permitted the trial court to stay the action on its own motion, regardless of whether the renewed forum non conveniens motion was filed after section 418.10, subdivision (a)'s deadline (i.e., " 'on or before the last day of [the defendant's] time to plead or within any further time that the court may for good cause allow' "). (See *id.* at pp. 132, 135.) *Britton* explained: "In granting the renewed motion, the trial court relied on its authority under section 410.30 to consider the convenience of the forum on its own motion." (*Id.* at p. 132.) Affixed to the conclusion of this textual sentence in the opinion is a footnote in which the *Britton* court observed: "The trial court specified that it was considering the issue on its own merits in response to plaintiffs' contention that the renewed motion was not a proper motion for reconsideration under section 1008." (*Id.* at p. 132 & fn. 2.) The next textual sentence after this footnote reads: "The plain language of section 410.30 authorized the trial court to consider whether to stay the action on the ground of forum non conveniens." (*Britton*, at p. 132.) Thus, the *Britton* court held that the plain language of section 410.30, subdivision (a) allowed the trial court in that case to reassess the inconvenient forum

27

issue on its own motion.[11] (See *Britton*, at p. 132; see also *ibid.* [thereafter addressing the plaintiffs' contention that "the trial court lacked authority to raise the forum non conveniens issue, *even on its own motion*, because the issue was waived by defendants," italics added].)

R&J claims the *Williamson* court misread *Britton* by concluding that the decision stands "for the proposition that section 1008 does not apply to renewed motions brought under section 410.30 . . . ." The *Britton* court did not explicitly state that a trial court may stay or dismiss an action in response to a renewed forum non conveniens motion that fails to comply with the requirements of section 1008. (See *Britton*, *supra*,

---

[11] The dissent correctly points out that *Britton* " 'construe[d] the provisions of sections 418.10 and 410.30, both relating to forum non conveniens motions, in harmony' and concluded that 418.10 specifies the procedure before a defendant has appeared whereas '[s]ection 410.30 applies after a defendant has appeared.' " (See Dissent, part A, *post*, quoting *Britton*, *supra*, 153 Cal.App.4th at p. 134.) This accurate observation, however, does not undermine our analysis of the decision or give full credit to the rulings in *Britton*. The *Britton* court articulated " ' "two independent reasons . . . for [its] decision, neither one [of which] is to be considered mere dictum" ' " (see *Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 164, fn. 8, italics omitted), i.e., (1) section 418.10, subdivision (a)'s deadline for a party to file a forum non conveniens motion did not preclude the trial court from, on its own motion, revisiting its prior inconvenient forum ruling pursuant to section 410.30; and (2) "section 418.10 provides special procedures for preanswer forum non conveniens motions," whereas section 410.30 permits a defendant to file such a motion after it has appeared. (See *Britton*, at pp. 132–135 & fn. 2, fn. omitted.)

28

153 Cal.App.4th at p. 132.) *Britton*'s conclusion, however, that a trial court possesses the statutory authority to reconsider the inconvenient forum issue on its own motion necessarily implies that section 1008 does not constrain that power. (See *ibid.*)

Our Supreme Court has interpreted section 1008 "as limiting the parties' power to file repetitive motions *but not the court's authority* to reconsider interim rulings on its own motion." (See *Le Francois*, *supra*, 35 Cal.4th at p. 1107, italics added.) Indeed, " '[t]he plain language of section 1008 consistently refers to "applications" for reconsideration and "renewals" of previous motions.' [Citation.] 'Clearly, trial courts do not make applications, motions, or renewals of motions to themselves.' [Citation.]" (See *id.* at p. 1106.) Because an order denying a forum non conveniens motion is an interim order,[12] a trial court's exercise of its authority under section 410.30 to, on its own motion, reconsider that prior ruling is not circumscribed by section 1008.

Furthermore, beyond merely questioning whether *Britton* was correctly decided, R&J does not explain why it apparently believes the *Britton* court erred in concluding that a trial court may act on " 'its own motion' " to address a forum non conveniens question for the purposes of section 410.30, subdivision (a), even

---

[12] (See *Aghaian v. Minassian* (2021) 64 Cal.App.5th 603, 610–612 [characterizing "an order denying an inconvenient forum motion" as an "interlocutory order"]; *Brown v. Upside Gading, LP* (2019) 42 Cal.App.5th 140, 144–146 [indicating that the terms "interlocutory order" and "interim order" are synonymous]; Black's Law Dict. (11th ed. 2019) [the entry for "order" likewise indicates that the terms "interlocutory order" and "interim order" are synonymous].)

though the court was prompted to do so by a party's renewed motion.  (See *Britton*, *supra*, 153 Cal.App.4th at p. 132.)

Accordingly, we reject R&J's argument that *Williamson* misconstrued *Britton*.  Instead, *Williamson* identified the logical implication of *Britton*'s holding, to wit, section 1008 does not restrict the authority conferred on the trial court by section 410.30, subdivision (a) to determine, on its own motion, whether California is a convenient forum.[13]  (See *Williamson*, *supra*, 212 Cal.App.4th at pp. 454–455.)

R&J further argues that "*Williamson* is the only case found after exhaustive research that applies this supposed exemption of forum non conveniens motions from section 1008."  Our independent research likewise has not revealed another case holding that section 410.30, subdivision (a) permits the trial court to revisit its prior forum non conveniens ruling based on new evidence presented in a renewed motion that purportedly fails to comply with section 1008.  On the other hand, R&J has not identified any authority that arrives at the opposite conclusion, nor has our own research discovered any such case law.  Because

_____

[13]  R&J does not challenge *Williamson*'s holding that a trial court may, on its own motion, reconsider the forum non conveniens issue based on new evidence that was not presented in connection with the prior motion.  (See *Williamson, supra*, 212 Cal.App.4th at pp. 453–454 [rejecting the plaintiffs' argument that the trial court erred in staying the action on its own motion because it did not "find the prior ruling was an abuse of discretion based on the evidence originally presented" to the court].)  Rather, R&J seems to argue that *Williamson*'s rationale for allowing a trial court to consider new evidence is applicable to only "traditional" forum non conveniens motions, an argument we reject in Discussion, part B.4, *post*.

30

*Williamson* seems to be the only case directly on point, we reject R&J's tacit suggestion that *Williamson* is a mere outlier or a decision that espouses a minority view.

Lastly, R&J contends, "*Williamson* likely reached the right result even under a correct section 1008 analysis, in light of its recognition that 'a significant change of circumstances exists in this case.'" (Quoting *Williamson*, *supra*, 212 Cal.App.4th at p. 455.) R&J maintains, "That finding would have brought the case within the parameters of section 1008, subdivision (b), which specifically allows for a renewed motion where circumstances have changed." The *Williamson* court, however, made this remark in the course of rejecting the plaintiffs' argument that the trial judge who stayed the case could not reverse the prior judge's ruling denying the initial forum non conveniens motion because no " 'significant change of circumstances' " had occurred after the first ruling. (See *Williamson*, at p. 455.) We thus fail to discern what relevance this observation has on the validity of *Williamson*'s interpretation of section 410.30.

> 4. *R&J's argument that* Williamson*'s holding should be limited to "traditional" forum non conveniens motions is unpersuasive; R&J's apparent obfuscation of the contractual basis for its third party beneficiary claim illustrates that* Williamson*'s interpretation of section 410.30 should apply in nontraditional cases as well*

R&J argues that, "assuming *Williamson* was correctly decided, its holding should be limited to a true forum non conveniens motion, not a motion for enforcement of a forum-selection clause."

31

In particular, R&J notes that "[b]oth *Britton* and *Williamson* justified their holdings on the rationale that 'it may be necessary to conduct discovery to develop the factual underpinnings of a forum non conveniens motion.' " (Quoting *Britton*, *supra*, 153 Cal.App.4th at p. 135; citing *Williamson*, *supra*, 212 Cal.App.4th at p. 454.) R&J points out the *Britton* court "determined that 'to retain a case for the entire duration of the litigation because the lack of connection to California was unclear at the outset would impair the state's interest in avoiding burdening courts and potential jurors with litigation in which the local community has little concern[.]' " (Quoting *Britton*, at p. 135.) Further, R&J notes that the *Williamson* decision relied on "both [of the above quoted] statements" from *Britton*. (Citing *Williamson*, at p. 454.) R&J submits that "[n]either rationale applies to forum-selection clause cases" because "the moving party [in such cases] knows the clause it seeks to enforce from the very beginning of the litigation" and "[t]he duration of the litigation will not change that."[14]

---

[14] R&J also intimates that *Williamson*'s and *Britton*'s principles should not apply to this case because the factors governing traditional forum non conveniens motions do not apply here and R&J bears the burden of proof in resisting the motion, whereas the burden rests with the party filing a traditional forum non conveniens motion. (See also Discussion, part B.1, *ante* [acknowledging these differences between traditional forum non conveniens motions and motions based on mandatory forum selection clauses].) R&J fails to explain through reasoned argument what relevance these distinctions have on whether *Williamson* and *Britton* should be limited to "traditional" forum non conveniens cases.

We first note that the text of section 410.30, subdivision (a) does not distinguish between traditional and nontraditional forum non conveniens motions. Rather, the provision authorizes a court to "stay or dismiss the action" "upon . . . its own motion" if it "finds that in the interest of substantial justice an action should be heard in a forum outside this state . . . ." (See § 410.30, subd. (a).)

The facts of the instant case demonstrate that allowing a trial court to, on its own motion, reconsider a prior ruling on a nontraditional forum non conveniens motion based on evidence not previously presented can further "the state's interest in avoiding burdening courts and potential jurors with litigation in which the local community has little concern." (See *Britton*, *supra*, 153 Cal.App.4th at p. 135.) As discussed in greater detail below, until R&J filed its opposition to the renewed forum non conveniens motion, Centria and the trial court were not aware that R&J's third party beneficiary theory was predicated on ASI's purchase order to Centria, which document is subject to the 2005 dealer agreement's forum selection clause. (See Discussion, part C, *post*.) Given that it became apparent in the course of litigating the forum non conveniens question that ASI—and, by extension, R&J as a purported third party beneficiary—had relinquished the right to pursue claims in California, it would be unfair to burden the courts and jurors of this state with further litigation of this case.[15]

---

[15] (See *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495 ["[A]lthough we have acknowledged a policy favoring access to California courts by resident plaintiffs [citation], we likewise conclude that the policy is satisfied in

In its first amended complaint, R&J vaguely alleged that in 2014, ASI and Centria "entered into a written contract in connection with" R&J's purchase order to ASI for "specific products and accompanying paint coatings," and that this contract between ASI and Centria "was made for [R&J's] benefit . . . ." In this pleading, R&J did not explain whether this 2014 written contract between ASI and Centria was a purchase order, dealer agreement, or some other writing. Similarly, in its opposition to Centria's initial motion, R&J failed to expound further on this issue, but instead simply pointed out it had alleged in the first amended complaint that "CENTRIA and ASI entered into an agreement in 2014, in which CENTRIA would manufacture and coat specific materials for installation for a public works project at the Port of Long Beach for the benefit of R&J."[16]

---

those cases where . . . a plaintiff has freely and voluntarily negotiated away his right to a California forum."]; *Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 132 ["A third-party beneficiary cannot assert greater rights than those of the promisee under the contract. [Citation.] . . . '[W]hen a plaintiff seeks to secure benefits under a contract as to which he is a third-party beneficiary, he must take that contract as he finds it. . . . [T]he third party cannot select the parts favorable to him and reject those unfavorable to him.' "].)

[16] In the opposition to Centria's original forum non conveniens motion, R&J cited paragraph 58 of its first amended complaint to support the proposition that R&J had alleged that "CENTRIA and ASI entered into a written agreement on or about April 23, 2014." In fact, R&J averred in paragraph 58 of its first

34

In R&J's opposition to Centria's renewed forum non conveniens motion, R&J asserted: "CENTRIA conceded the existence of a contract—other than a dealer agreement—with ASI stemming from R&J's purchase order. Mr. Laramie declared that it was his understanding that R&J ' . . . purchased sheet metals and related materials from ASI . . .' and that 'ASI purchased certain of those materials from Centria in the First Quarter of 2014.' " In its respondent's brief, Centria asserts that R&J's opposition to the renewed motion was the first time that R&J had clarified that its third party beneficiary theory was premised on a purchase order sent to Centria for the materials R&J had requested from ASI. By failing to dispute this assertion in its reply to Centria's respondent's brief, R&J implicitly concedes that it was not until R&J filed the opposition to the renewed motion that R&J clarified that its legal theory relies on a purchase order submitted to Centria. (See *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

Had R&J clarified the basis of its legal theory at an earlier point in the proceedings, it would have been apparent to the trial court that the 2005 dealer agreement's forum selection clause applies to R&J's third party beneficiary claim. As we explain in Discussion, part C, *post*, ASI's purchase order and Centria's acknowledgments of that order are governed by the forum selection clause contained in the 2005 dealer agreement.

---

amended complaint that *R&J* sent a purchase order to ASI on or about April 23, 2014.

Because of R&J's initial failure to identify the documents giving rise to its cause of action, the trial court erroneously concluded in its order on the initial motion that because "[R&J] allege[d] that [Centria] and ASI entered an agreement for the benefit of [R&J] in 2014, not 2005," R&J was not bound by the forum selection clause in the 2005 dealer agreement.

Furthermore, the trial court's statements at the hearing on the renewed motion suggest that had it been aware of the factual underpinnings of R&J's third party beneficiary theory before it ruled on the initial motion, the court would have been inclined to grant Centria's request for a continuance to allow Centria to authenticate the 2005 dealer agreement properly, thereby allowing the court to consider that document in ruling on Centria's initial motion.[17]

The dissenting opinion suggests that Centria should have been aware of the precise nature of R&J's legal theory before R&J submitted its opposition to the renewed forum non conveniens motion. In particular, the dissent points out that "R&J alleged and argued from the outset that the agreement at

---

[17] At the initial motion hearing, Centria's counsel requested a continuance to submit, inter alia, a declaration properly authenticating the 2005 dealer agreement. The trial court indicated at the hearing on the renewed motion that, by granting Centria's renewed motion, the court was, in effect, granting Centria's prior request for a continuance of the initial hearing—i.e., the court stated it had "reviewed what [it] did at the last hearing, where [it] did not grant a continuance," and decided to "exercis[e its] discretion to do that." (See also *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 241 [noting that a trial court has the discretion to consider evidence the movant has failed to include with its opening brief].)

issue was a contract between ASI and Centria that arose out of R&J's purchase order in 2014." (See Dissent, part C, *post*.) As we explained earlier in this section, however, R&J initially failed to identify clearly *which* contract between ASI and Centria was the basis of R&J's third party beneficiary theory. R&J's opposition to the renewed motion was the first time it intimated that this theory was predicated on a purchase order from ASI, rather than on some other document that potentially could have superseded the 2005 dealer agreement.[18]

Accordingly, the procedural history of this case demonstrates that *Williamson*'s and *Britton*'s holdings ought not artificially be limited to "traditional" forum non conveniens motions. Permitting trial courts to revisit orders denying inconvenient forum motions based on mandatory forum selection clauses ensures that parties to contracts, and, by extension, third party beneficiaries, are bound to their agreements and cannot avoid these obligations by either unintentionally or deliberately obfuscating the identity of the documents underlying their claims.

We also acknowledge the trial court found that Centria had established "new or different facts to warrant a subsequent application for the same order" under section 1008, subdivision (b) because Centria had offered evidence that: (1) the "renewed motion [was] necessitated by [R&J's] insistence that a 2014 Agreement between [Centria] and ASI supersedes the

---

[18] Adding to the confusion created by R&J's arguably intentionally vague pleading, is the existence of a 2014 dealer agreement that contains the same Pennsylvania forum selection clause as that included in the 2005 dealer agreement.

express forum selection clause of the 2005 Dealer [A]greement and that [R&J's] opposition to [Centria's] initial motion argued that this 2014 Agreement controls without alleging the terms of the agreement or whether it too contained a forum selection clause"; (2) there is "a 2014 Dealer Agreement between [Centria] and ASI, which does contain the same forum selection clause as the 2005 Dealer Agreement"; and (3) "[R&J's] improperly served and untimely opposition materially prejudiced [Centria's] ability to prepare a reply to the original motion and present the new facts asserted in th[e] renewed motion previously."

Given our conclusion that section 410.30, subdivision (a) authorized the trial court to reconsider the denial of Centria's original motion, we need not—and thus do not—address whether the trial court correctly applied section 1008, subdivision (b). (See *Estate of Sapp*, *supra*, 36 Cal.App.5th at p. 104 [" 'If the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion.' "].)  That being said, we agree with the trial court that R&J's conduct had misled the court to initially believe that R&J was not bound by the forum selection clause found in the 2005 dealer agreement.

> 5.      *We respectfully disagree with the dissent's assertion that* Williamson *was wrongly decided*

At bottom, the dissent advances three reasons why it concludes that *Williamson* was wrongly decided: (1) section 1008's requirements should have applied to the renewed motion in that case because "the *Williamson* court's conclusion that the trial court acted on its own motion when it granted a motion by a party appears contrary to the facts and the

38

law"; (2) *Williamson* is undermined by a later Supreme Court decision, to wit, *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830 (*Even Zohar Construction & Remodeling, Inc.*); and (3) a trial court can, on its own motion, set aside a ruling only if the law and evidence submitted in connection with the original motion demonstrates that the prior ruling was erroneous.[19] (See Dissent, part A, *post*.) Respectfully, we disagree.

> i. *We reject the dissent's assertion* Williamson *erred in concluding that the trial court in that case had acted on its own motion*

The dissent argues "[t]here is no basis to conclude that the Legislature intended that a stay or dismissal on the trial court's 'own motion' encompasses an order made in response to and in reliance on a renewed motion or motion for reconsideration by a party, as happened here and in *Williamson*." (Dissent, part A, *post*.) The dissent further maintains: "The statute, which allows the court to stay or dismiss an action 'upon motion of a party *or* its own motion,' would be redundant if the latter encompassed the former." (*Ibid.*, quoting § 410.30, subd. (a) [italics added by the dissent].)

The dissent's approach is inconsistent with our high court's decision in *In re Winnetka V.* (1980) 28 Cal.3d 587 (*Winnetka V.*). *Winnetka V.* arose out of a wardship proceeding commenced against a minor who committed attempted robbery and assault

---

[19] We recognize that our discussion of the dissent's arguments differs slightly from the manner in which Dissent, part A, *post* is organized. We have consolidated certain contentions that we believe relate to one another.

with a deadly weapon.  (See *Winnetka V.*, at pp. 589–590.)  At the minor's disposition hearing, a juvenile court referee decided not to commit the minor to the California Youth Authority (CYA), but to instead place her "in a county-operated juvenile facility . . . ." (See *id.* at p. 590.)  The prosecution later sent a letter to the presiding judge of the juvenile department requesting a rehearing of the referee's disposition, which relief the presiding judge granted without first affording the minor notice and an opportunity to be heard.  (See *id.* at pp. 590–591, 593–595.)  The new judge to whom the case was thereafter reassigned ultimately decided to commit the minor to the CYA.  (*Id.* at p. 590.)  The minor appealed, inter alia, the commitment order.  (*Id.* at pp. 590–591.)

The statutes at issue in *Winnetka V.* permitted "rehearing of a referee's disposition only on (1) application by the minor or the parent or guardian ([Welf. & Inst. Code,] § 252), or (2) a juvenile judge's 'own motion' ([Welf. & Inst. Code,] § 253)."  (See *Winnetka V., supra,* 28 Cal.3d at p. 591; see also *id.* at p. 589, fn. 1 [noting that all statutory references in the opinion were to the Welf. & Inst. Code].)  The Supreme Court concluded the rehearing was improperly granted on the ground that the minor was "denied due process because the judge ordered rehearing without giving her notice and an opportunity to respond . . . ."[20] (See *Winnetka V.*, at pp. 593–595.)

---

**20** R&J does not assert that the trial court violated its due process rights.  In any event, any such argument would not be well-founded given that R&J filed an opposition to the renewed motion and appeared at the hearing thereon.

40

Although the Supreme Court ultimately decided to reverse the commitment order, it first rejected the minor's argument that "[t]he order to rehear was not on the court's own motion because it was prompted by the [prosecution's] letter." (See *Winnetka V.*, *supra*, 28 Cal.3d at pp. 591–593.)  The *Winnetka V.* court reasoned it saw "nothing in section 253 . . . that prohibits the court from receiving outside communications before deciding to order rehearing on its own motion." (*Winnetka V.*, at p. 591.)  The court also remarked that "[t]he impetus to action sometimes will come from others—the referee or other interested observers such as the district attorney." (See *id*. at p. 592.)  The Supreme Court closed its analysis by stating:  "We therefore conclude that the order for rehearing was not improper on the ground that it was preceded and may have been prompted by a letter from the district attorney's office." (See *id*. at p. 593.)

Likewise, nothing in the text of section 410.30, subdivision (a) indicates that a trial court may not, "upon . . . its own motion," revisit a prior forum non conveniens ruling at a party's suggestion.  (See § 410.30, subd. (a).)  Thus, *Winnetka V.* substantiates *Williamson*'s interpretation of section 410.30, subdivision (a).  Indeed, approximately 25 years after the *Winnetka V.* decision, the Supreme Court provided further support for *Williamson*'s holding that a trial court may, on its own motion, reconsider a prior ruling in response to a party's filing.  Specifically, the *Le Francois* court stated, "If a court believes one of its prior interim orders was erroneous, it should be able to correct that error *no matter how it came to acquire that belief*." (*Le Francois*, *supra*, 35 Cal.4th at p. 1108, italics added.)  The high court further remarked, "[I]t should not matter whether the 'judge has an unprovoked flash of understanding in the

41

middle of the night' [citation] or acts in response to a party's suggestion." (*Ibid.*)  Accordingly, a court may act on its own motion pursuant to section 410.30 even if it was prompted to do so by a party's written submission.

 *Winnetka V.* also refutes the dissent's claim that *Williamson*'s construction of section 410.30, subdivision (a) allowing a court to revisit a prior forum non conveniens ruling in response to party's renewed motion renders "redundant" the text from that provision allowing the court to stay or dismiss an action upon a party's motion.  (See Dissent, part A, *post*.)  The *Winnetka V.* court held "a mere communication from the district attorney or other interested person has no official status, and the court is free to reject it informally" because "[s]ection 252 . . . confer[s] a right to 'apply . . . for a rehearing' only on the minor or one acting on behalf of the minor."  (See *Winnetka V.*, *supra*, 28 Cal.3d at pp. 591–592.)  Thus, the Supreme Court's interpretation of Welfare and Institutions Code sections 252 and 253 permitted, but did not require, the juvenile court to consider whether to order a rehearing in response to the district attorney's letter.  (See *Winnetka V.*, at pp. 591–593.)  Put differently, *Winnetka V.* recognized two mutually exclusive, nonoverlapping categories of party submissions that may trigger a rehearing of a referee's disposition:  (1) an application filed by a minor or someone acting on his or her behalf, which the juvenile court *must* consider; and (2) a communication from another interested person, which the juvenile court *may*, but need not, consider.  (See *ibid.*)

 With regard to forum non conveniens motions, section 410.30, subdivision (a) permits a party to file its first motion seeking to stay or dismiss an action, which the trial court

42

*must* consider. (See § 410.30, subd. (a) ["When a court upon motion of a party . . . finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court *shall* stay or dismiss the action[,]" italics added].) If the court denies that motion and the party later files a successive motion to stay or dismiss the action on the ground of forum non conveniens, section 1008 *permits* the court to disregard that motion if it does not satisfy the statute's requirements.[21]

In contrast, section 410.30, subdivision (a) also confers upon the court *the discretion* to consider the filing in determining whether to stay or dismiss the action on its own motion.[22] The only constraint section 410.30, subdivision (a) places on the trial court's exercise of that discretion is the requirement that the court "find[ ] that in the interest of substantial justice" the "action should be heard in a forum outside this state . . . ." (See § 410.30, subd. (a).) As noted in our discussion of *Williamson* and *Britton* in Discussion, part B.4, *ante*, that discretion is informed by the court's independent interest in ensuring that a case is expeditiously tried in the proper forum (e.g., a court chosen by a

---

[21] (See *Le Francois*, *supra*, 35 Cal.4th at p. 1108 ["[A] party may not file a written *motion* to reconsider that has procedural significance if it does not satisfy the requirements of section . . . 1008."].)

[22] (See *Williamson*, *supra*, 212 Cal.App.4th at p. 454 ["[S]ection 410.30, subdivision (a) grants a trial court independent authority to determine whether California is a convenient forum even if a party's forum non conveniens motion does not otherwise satisfy the requirements of section 1008 for reconsideration of a prior order or renewal of an earlier motion."].)

forum selection clause).  Because *Williamson*'s plain language interpretation of the statute recognizes two mutually exclusive, nonoverlapping categories of party submissions that may result in the stay or dismissal of an action on the basis of inconvenient forum (i.e., (1) inconvenient forum motions the trial court *must* consider, and (2) inconvenient forum motions the court *may*, *in its discretion*, consider), *Williamson*'s holding does not render any portion of the statute superfluous.

> ii.      Even Zohar Construction & Remodeling, Inc.
> *does not undermine* Williamson

Next, the dissent intimates that our Supreme Court's decision in *Even Zohar Construction & Remodeling, Inc.* establishes that a trial court can reconsider a prior ruling in response to a motion that fails to comply with section 1008 only if the court is doing so pursuant to its *inherent*, as opposed to *statutory*, authority.  (See Dissent, part A, *post*.)  Specifically, the dissent states:  "The Supreme Court has 'recognized only one exception to section 1008's "jurisdiction[al]" [citation] exclusivity': that a court may ' "reconsider its previous interim orders on its own motion." ' [Citation.]"  (Dissent, part A, *post*, quoting *Even Zohar Construction & Remodeling, Inc.*, *supra*, 61 Cal.4th at p. 840, which in turn quotes *Le Francois*, *supra*, 35 Cal.4th at pp. 1096–1097.)  The dissent's quotation from *Even Zohar Construction & Remodeling, Inc.* cannot bear the weight the dissent places on it.

The issue in *Even Zohar Construction & Remodeling, Inc.* was "whether section 1008 governs renewed applications under section 473, subdivision (b) . . . for relief from default based on an attorney's 'sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect' [citation.]"  (See *Even Zohar*

44

*Construction & Remodeling, Inc.*, *supra*, 61 Cal.4th at p. 833.) Our high court held that "section 1008 does govern such applications." (*Even Zohar Construction & Remodeling, Inc.*, at p. 833.) Whether the trial court had the discretion to reconsider its prior ruling denying relief *on its own motion*, however, was not an issue in that case; in fact, the trial court had "felt 'bound to follow' " a Court of Appeal decision "which the court understood as holding that section 473[, subdivision ](b) takes precedence over section 1008, and that relief under section 473[, subdivision ](b) based on an attorney's affidavit of fault is mandatory where no part of the fault is shown to be attributable to the attorney's clients." (See *Even Zohar Construction & Remodeling, Inc.*, at p. 836.)

The quotation from the decision upon which the dissent relies appears in the high court's discussion of case law construing section 1008. (See *Even Zohar Construction & Remodeling, Inc.*, *supra*, 61 Cal.4th at pp. 840–841.) Thus, the *Even Zohar Construction & Remodeling, Inc.* court were merely observing that *Le Francois* was the only Supreme Court decision that had recognized an exception to section 1008. (See *Even Zohar Construction & Remodeling, Inc.*, at p. 841.) The *Even Zohar Construction & Remodeling, Inc.* court had no opportunity to address—let alone overturn—*Williamson*'s interpretation of section 410.30. (See *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 85, fn.4 [" '[C]ases are not authority for propositions that are not considered.' "].)

Indeed, the *Even Zohar Construction & Remodeling, Inc.* court expressly acknowledged that a statute could confer independent authority to grant a renewed motion or application that does not comply with the requirements of section 1008.

45

Specifically, our high court observed, "This is not to say that section 1008 could never conceivably conflict with another statute or that in the event of a conflict section 1008 would inevitably take precedence." (See *Even Zohar Construction & Remodeling, Inc.*, *supra*, 61 Cal.4th at pp. 842–843 [citing as illustrative an opinion from Division Eight of our district that was issued in *In re Marriage of Hobdy* (2004) 123 Cal.App.4th 360, and noting that *Hobdy*: (1) held that a former Family Code provision's more generous timing provision for a motion to reconsider a prior denial of attorney fees prevailed as the "more specific statute" over the 10-day deadline for reconsideration motions in section 1008, subdivision (a), and (2) rejected the contention that the trial court lacked jurisdiction on account of the moving party's failure to bring her reconsideration motion within section 1008, subdivision (a)'s 10-day deadline].)

The dissent further suggests that the *Even Zohar Construction & Remodeling, Inc.* decision demonstrates that *Williamson* was wrongly decided because *Williamson* did not "examin[e] . . . the language and purposes of" section 1008 and section 410.30 to determine whether they "conflict." (See Dissent, part A, *post*.) Yet, as we explained in Discussion, part B.3, *ante*, a trial court's exercise of its authority under section 410.30, on its own motion, to revisit a prior ruling on an inconvenient forum motion is not restricted by section 1008, given that the *Le Francois* court held that section 1008 "limit[s] the parties' power to file repetitive motions *but not the court's authority* to reconsider interim rulings on its own motion." (See *Le Francois*, *supra*, 35 Cal.4th at p. 1107, italics added). Thus, there was no

46

conflict between sections 410.30 and 1008 for *Williamson* to analyze.

The dissent intimates that our reading of *Le Francois* is incorrect because it would supposedly " ' "eliminat[e] the distinction" ' " between cases in which a trial court grants reconsideration on its own motion and those in which the court does so in response to a party's motion. (See Dissent, part A, *post*, quoting *Le Francois*, *supra*, 35 Cal.4th at p. 1104.) As we explained in Discussion, part B.5.i, *ante*, *Williamson*'s construction of section 410.30, subdivision (a) permits, but does not require, a trial court to reconsider an order denying an inconvenient forum motion in response to a renewed motion that falls short of complying with section 1008. Under this approach, a party may compel a court to revisit its previous forum non conveniens ruling only if that party adheres to the strictures of section 1008. Because a trial court may still invoke section 1008 to deny a party's procedurally improper renewed forum non conveniens motion, our interpretation of the *Le Francois* decision does not " ' "render[ ] the provisions of the statute meaningless." ' " (See Dissent, part A, *post*, quoting *Le Francois*, at p. 1104.)

We also note the dissent's construction of sections 410.30 and 1008 would substantially curtail a trial court's statutory authority to stay or dismiss an action "in the interest of substantial justice . . . ." (§ 410.30, subd. (a).) The dissent argues that a trial court "may grant a stay or dismissal on its own motion . . . in response to a party's suggestion or motion, so long as the court is correcting 'its own errors' [citations][ ] pursuant to the language of section 410.30 and to the *Le Francois* exception to section 1008." (See Dissent, part A, *post*.)

47

In cases in which a trial court has denied a motion to dismiss or stay on the ground of inconvenient forum, the dissent's interpretation of section 410.30, subdivision (a) would allow the court to reconsider that ruling only if it has the inherent constitutional authority to do so under *Le Francois* and its progeny, i.e., what the dissent dubs "the *Le Francois* exception to section 1008." (See fn. 10, *ante* [observing that *Le Francois* recognized a trial court's inherent constitutional authority, on its own motion, to reconsider prior interim orders].) Thus, it seems that under the dissent's interpretation of section 410.30, subdivision (a), a trial court has the independent statutory (as opposed to inherent constitutional) authority to act "upon . . . its own motion" in response to a party's filing only if the court had not denied a prior forum non conveniens motion filed by that party (§ 410.30, subd. (a)); otherwise, the court could grant reconsideration only if the party's successive filing satisfies the *Le Francois* exception to section 1008 (i.e., the court has *inherent* authority to grant such relief). Respectfully, we believe this is too narrow an interpretation of section 410.30, and also an interpretation that is inconsistent with the manner in which the *Winnetka V.* court construed a similar statute conferring authority upon a court, on its own motion, to revisit a matter. (See Discussion, part B.5.i, *ante*.)

> iii. *Section 410.30 does not limit a trial court to considering law and evidence proffered in the original motion when it exercises its authority, on its own motion, to stay or dismiss an action in response to a party's renewed motion*

The dissent contends "the 'usual and ordinary meaning' of 'own motion' [does not] include[ ] when a court rules in reliance

48

on new evidence or law in a party's motion that the court would not be aware of but for the motion." (See Dissent, part A, *post*.) The dissent further maintains: "Rather, *Le Francois* and its progeny suggest that a workable test for whether a trial court ruled on its own motion is whether the court *could have* issued the same ruling sua sponte, even if it did not actually do so." (See Dissent, part A, *post*.)

As an initial observation, the dissent's approach would engraft a requirement onto section 410.30, subdivision (a) that is entirely absent from the text of the statute. The provision authorizes the court to "stay or dismiss the action" "[w]hen [it] upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state . . . ." (See § 410.30, subd. (a).) The plain language of the statute does not bar the trial court from dismissing or staying an action on its own motion based on law or evidence that a party failed to present in support of a prior unsuccessful forum non conveniens motion. (See *ibid.*) Because the dissent's construction modifies the statute's unambiguous text, we respectfully decline to follow the dissent's approach. (See *Green*, *supra*, 42 Cal.4th at p. 260 ["If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent."].)

In arguing that "whether a trial court is acting on its own motion in reconsidering a prior order depends on whether the court relies on new law or evidence that was not present in the original motion," it appears the dissent is importing into section 410.30 a limitation the Court of Appeal in *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301 (*Barthold*) imposed on a trial court's exercise of its inherent authority to reconsider prior

49

rulings. (See Dissent, part A, *post*, citing *Barthold*, at pp. 1308, 1314.) As we explained in Discussion, parts B.2–B.3, *ante*, *Williamson* establishes that a trial court has statutory authority, on its own motion, to reconsider its prior forum non conveniens rulings that is independent of the court's inherent authority to revisit previous orders.

Regardless of whether one agrees with *Barthold*,[23] *Barthold*'s holding that a court's inherent authority to reconsider its prior rulings permits it to consider only evidence and law submitted in support of the moving party's initial motion appears to be based on the doctrine of separation of powers, that is, courts have the constitutional power to correct their own errors.[24] (See *Barthold*, *supra*, 158 Cal.App.4th at pp. 1307–1308.)

In contrast, as we detailed in Discussion, part B.4, *ante*, section 410.30, subdivision (a) does not simply allow a trial court

---

[23] The dissent also implies that our division approved of *Barthold*'s approach in *Cox v. Bonni* (2018) 30 Cal.App.5th 287. (See Dissent, part A, *post*.) In *Cox*, we had no occasion to determine whether *Barthold* was correctly decided because there was no dispute that "the trial court did not grant reconsideration based on the purportedly new law and facts defendant put forth in its motion for reconsideration . . . ." (See *Cox*, at pp. 312–314.)

[24] The dissent also relies upon two Third District decisions that followed *Barthold*; these decisions, however, shed no further light on the rationale underlying *Barthold*'s limitation on a trial court's inherent authority. (See *In re Marriage of Spector* (2018) 24 Cal.App.5th 201, 201, 210–216 [citing *Barthold* with approval without further explaining the rationale for *Barthold*'s limitation on a trial court's inherent authority]; *In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1463, 1469–1470 [same], both of which are cited in Dissent, part A, *post*.)

to correct its own errors.  Instead, the provision empowers a trial court, on its own motion, to decide to stay or dismiss an action, notwithstanding a denial of a previous inconvenient forum motion, if it later becomes apparent that California is not the proper forum for the matter.  For example, as noted in *Williamson*, discovery conducted after the issuance of the prior ruling may reveal that the case should be heard elsewhere.  (See *Williamson*, *supra*, 212 Cal.App.4th at pp. 454–455.)  Further, as here, a plaintiff's subsequent clarification of the legal theory underlying its claim may also demonstrate that the proceedings do not belong in California because the parties contractually chose another state as the proper forum in which to litigate their disputes.

We further observe that the Supreme Court's decision in *Winnetka V.* demonstrates that in certain cases, a trial court may properly rely on newly submitted evidence in acting on its own motion.  There, the high court contemplated that "an informal request for rehearing of a referee's decision" may be based on "materials . . . br[ought] to the court's attention other than those already in the record . . . ."  (See *Winnetka V.*, *supra*, 28 Cal.3d at p. 595.)  The Supreme Court did not declare that a juvenile court lacks authorization to consider such evidence, but merely held that the minor must be "given access to all [such] materials" and "accorded a reasonable opportunity" to respond in writing.  (See *ibid*.)

For the foregoing reasons, we are unpersuaded by the dissent's criticism of the *Williamson* decision.  In accordance with *Williamson*'s holding, we conclude that section 410.30 authorized the trial court to reconsider its prior order denying Centria's initial motion to stay or dismiss the action.

51

## C. R&J Fails to Establish the Trial Court Erred in Enforcing the Forum Selection Clause Included in the 2005 Dealer Agreement

R&J argues that even if the trial court had the authority to reconsider its prior ruling denying Centria's first forum non conveniens motion, the court erred in concluding that R&J was bound by the forum selection clause in the 2005 dealer agreement. Specifically, R&J contends: (1) R&J's third party beneficiary claim is predicated on "the 2014 purchase contract between ASI and Centria," which is governed by its "own terms and conditions" and "does not contain a forum-selection clause"; (2) the 2014 purchase contract does not incorporate by reference the terms of the 2005 dealer agreement; and (3) "[t]he Terms and Conditions of the 2014 purchase contract contain provisions which are superfluous if the 2005 dealership agreement is incorporated into it and controls all transactions between Centria and ASI." We reject these arguments and conclude that the forum selection clause in the 2005 dealer agreement controls.

As a preliminary matter, it is important to define the "2014 purchase contract between Centria and ASI" that R&J now asserts gives rise to its third party beneficiary cause of action. In its opening brief, R&J claims that the following documents Centria submitted in connection with its reply brief on the renewed motion "evidence the 2014 purchase agreement": (1) "An incomplete copy of a February 28, 2014, quote from Centria to ASI for the materials contemplated by R&J for the Project"; (2) "[t]he March 19, 2014 'preliminary purchase order' from ASI to Centria, placing the order for the materials ordered from ASI by R&J in April 2014"; and (3) "[t]wo acknowledgments from

Centria to ASI dated April 29, 2014, relating to R&J's order."[25] Later in that brief, R&J further suggests it believes that the quote is part of the so-called "2014 purchase contract . . . ." Yet, R&J does not elaborate on the basis of its apparent belief that Centria's quote to ASI is part of the contract supporting the third party beneficiary cause of action, and R&J seems to abandon this position in its reply by omitting the February 18, 2014 quote from the definition of "the 2014 purchase contract" that R&J utilizes in that brief. Accordingly, we address only whether ASI's purchase order and Centria's two purchase acknowledgments are subject to the forum selection clause in the 2005 dealer agreement.[26]

---

[25] R&J complains that "Centria for the first time presented the [trial] court with documents evidencing the April 2014 purchase contract" "[i]n replying to R&J's opposition" to the renewed motion, and that "R&J had no opportunity to argue the interpretation of the 2014 purchase contract" as a result. Nevertheless, R&J does not argue that it would be improper for us on appeal to consider those documents in determining whether the trial court erred in dismissing the action against Centria.

[26] (See *Hernandez, supra*, 37 Cal.App.5th at p. 277 [" 'When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]" [Citation.]' [Citation.] . . . [¶] . . . 'We are not bound to develop appellants' arguments for them.' "]; cf. *Young v. Daimler AG* (2014) 228 Cal.App.4th 855, 864, fn. 6 [concluding that the "[a]ppellants appear[ed] to have abandoned" a legal theory raised in their opening brief by claiming in their reply that a different theory was " '[t]he only issue before the Court' "].)

"Courts will construe together several documents concerning the same subject and made as part of the same transaction [citations] even though the documents were not executed contemporaneously [citation] and do not refer to each other [citations]. It is generally a factual question whether several documents were intended to govern the same transaction. [Citations.] However, '[i]nterpretation of a contract presents a question of law unless it depends on conflicting evidence, and an appellate court is not bound by a trial court's interpretation which does not depend on the credibility of extrinsic evidence.' [Citations.]" (*Boyd v. Oscar Fisher Co.* (1989) 210 Cal.App.3d 368, 378, citing, inter alia, Civ. Code, § 1642 ["Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."]; see also *Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 814 ["Civil Code section 1642 'is most frequently applied to writings executed contemporaneously, but it is likewise applicable to agreements executed by the parties at different times if the later document is in fact a part of the same transaction.' "].)

We conclude as a matter of law that the 2005 dealer agreement, ASI's purchase order, and Centria's purchase order acknowledgment forms all concern the same subject and are part of the same transaction.[27]

---

[27] R&J does not contest, and thus leaves undisturbed, the trial court's finding that the 2005 dealer agreement was the "Dealer Agreement in effect" when ASI purchased "the materials at issue in the underlying lawsuit . . . ." (See *Yu*, *supra*, 196 Cal.App.4th at p. 787; *Estate of Sapp*, *supra*, 36 Cal.App.5th at p. 104.)

In particular, paragraph 12 of the 2005 dealer agreement provides in pertinent part: "CENTRIA will issue, in a timely manner, *an acknowledgment* of each bill of material Dealer submits. . . . The Dealer shall promptly review the *order acknowledgment form* and advise CENTRIA of corrections it believes are necessary. . . . Engineering Support Services will be provided pursuant to separate *purchase orders* between CENTRIA and Dealer or Dealer may request that CENTRIA quote any project on a lump sum basis." (Italics added.)

In turn, paragraph 13 states: "Unless otherwise specifically agreed in writing by CENTRIA, the terms and conditions stated in the CENTRIA Price Book and CENTRIA's terms and conditions of sale as stated in CENTRIA's order acknowledgment form shall be applicable to all sales of Products by CENTRIA to Dealer, *notwithstanding any additional or conflicting terms or conditions stated by Dealer in any purchase order or other writing*. In the event of a conflict between the provisions of this Agreement and the terms and conditions stated in the Price Book *or in the order acknowledgment form*, the provisions of this Agreement shall govern." (Italics added.)

In addition, paragraph 17 provides in relevant part: "The parties may modify, vary or alter the provisions of this Agreement only by an instrument in writing duly signed by authorized representatives of the parties . . . ."

When paragraphs 12 and 13 of the 2005 dealer agreement are read together, it is apparent the parties intended that the agreement apply to sales effectuated through ASI's purchase orders and Centria's purchase order acknowledgments, meaning that the dealer agreement, purchase orders, and purchase order acknowledgments all concern the same subject and are part of

the same transaction.  Furthermore, paragraphs 13 and 17 evince the parties' intention that the 2005 dealer agreement's terms govern the sales associated with ASI's purchase orders and Centria's purchase order acknowledgments.[28]

Similarly, paragraph 16 of the 2005 dealer agreement demonstrates that the parties intended the forum selection clause to apply to actions relating to sales Centria made to ASI via acknowledgment forms issued in response to ASI's purchase orders.  As relevant here, paragraph 16 provides:  "*Any action brought* under, *as a result of or relating to this Agreement* shall be instituted and litigated in the courts of the Commonwealth of Pennsylvania located in Allegheny County, Pennsylvania.  Each party irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds, . . . and consents to the jurisdiction of said courts."[29]  (Italics added.)  Thus, Centria

_____

[28]  Although paragraph 17 allows the parties to modify the 2005 dealer agreement via "an instrument in writing duly signed by authorized representatives of the parties," ASI's purchase order and Centria's two purchase order acknowledgments are not signed by ASI's and Centria's respective representatives.

[29]  Although paragraph 16 of the 2005 dealer agreement also provides that "[t]his Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania," R&J and Centria tacitly agree that California contract law principles govern whether the dealer agreement's forum selection clause applies to R&J's cause of action against Centria.  (See *Artal*, *supra*, 111 Cal.App.4th at p. 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)

and ASI agreed to litigate any disputes concerning Centria's sales of its goods (e.g., the duration of a warranty) in Pennsylvania.[30]

R&J nonetheless insists that "[t]he Terms and Conditions of the 2014 purchase contract contain provisions which are superfluous if the 2005 dealership agreement is incorporated into it and controls all transactions between Centria and ASI." "For example, the Terms and Conditions [found in the purchase order acknowledgment forms], paragraph 11, includes the choice-of-law provision already present in paragraph 13 of the 2005 dealership agreement."[31] (See also fn. 29, *ante* [acknowledging that the 2005 dealer agreement has a Pennsylvania choice of law clause].) We are unpersuaded.

"The canon against surplusage should not be invoked when it leads to an unreasonable result." (*Sturgeon v. County of Los Angeles* (2015) 242 Cal.App.4th 1437, 1448, italics omitted; *ibid.* [noting that this interpretive canon applies to statutes]; see also *Christian v. Flora* (2008) 164 Cal.App.4th 539, 551 ["Contracts . . . are writings to be construed in accordance with substantially the same canons of interpretation as statutes."].)

Under R&J's construction of the documents in question, Centria would have to repeat in each purchase order

---

[30] (Cf. *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1675–1676 [holding that forum selection clauses providing that " 'any case or controversy arising under or in connection with the Agreement[s]' shall be heard in a New York court . . . [¶] . . . applied . . . to any cause of action based on the relationship created by the contract"].)

[31] Unlike Centria's purchase order acknowledgments, ASI's purchase order is not accompanied by a page of terms and conditions.

acknowledgment form any potentially applicable term from the 2005 dealer agreement or risk losing the right to enforce any omitted term. This interpretation is especially absurd when applied to the forum selection clause in the 2005 dealer agreement, given that it would make little sense for the parties to declare that the clause governs "[a]ny action brought . . . as a result of or relating to this Agreement" if the clause's applicability was nonetheless contingent on Centria's repeating the provision in the purchase order acknowledgment form. Because the surplusage canon's application to this case would defeat ASI's and Centria's mutually expressed intent, and R&J claims to stand in ASI's shoes as a third party beneficiary, we decline to employ the doctrine here. (See Civ. Code, § 1636 ["A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."].)

In sum, the Pennsylvania forum selection clause in the 2005 dealer agreement applies to R&J's third party beneficiary claim because this agreement and the documents ASI and Centria issued in connection with the sale of the materials in question concern the same subject matter and are part of the same transaction. Accordingly, we affirm the trial court's order enforcing this forum selection clause.

## DISPOSITION

The judgment of dismissal is affirmed.  Respondent Centria, Inc. doing business as Centria Architectural Systems is awarded its costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.


I concur:


ROTHSCHILD, P. J.

CHANEY, J.

I respectfully dissent.

Respondent Centria, Inc. dba Centria Architectural Systems (Centria) argues that, when the trial court granted its renewed motion to stay or dismiss proceedings brought under Code of Civil Procedure[1] sections 1008 and 410.30, relying on new evidence presented with that motion, the court acted on its "own motion" pursuant to section 410.30 and was not subject to the requirements of section 1008. I believe this contention is inconsistent with the facts and the law.

I agree with appellant R & J Sheet Metal, Inc.'s (R&J) contention that the motion was not based on new or different facts and thus was improperly granted under section 1008. Given the jurisdictional nature of section 1008, I would therefore reverse the judgment.

A.    **Section 410.30 is not in conflict with section 1008 and is subject to its requirements with respect to renewed motions.**

Section 1008, subdivision (b), allows a party to "make a subsequent application for the same order upon new or different facts, circumstances, or law . . . ." (§ 1008, subd. (b).) Subdivision (e) provides: "This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and *applies to all applications* to reconsider any order of a judge or court, or *for the renewal of a previous motion*, whether the order deciding the previous matter

_____

[1] All undesignated statutory references are to the Code of Civil Procedure.

or motion is interim or final. *No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section.*" (§ 1008, subd. (e), italics added.)

The Supreme Court has "recognized only one exception to section 1008's 'jurisdiction[al]' [citation] exclusivity": that a court may " 'reconsider its previous interim orders on its own motion.' " (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 840 (*Even Zohar*), quoting *Le Francois v. Goel* (2005) 35 Cal.4th 1094 (*Le Francois*).) Under the *Le Francois* exception, "the trial court must conclude that its earlier ruling was wrong, and change that ruling *based on the evidence originally submitted.*" (*In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1314 (*Barthold*); *id.* at p. 1308 [*Le Francois* requires "that the trial court reconsider a prior ruling based on its own realization that the ruling was erroneous, and not based upon a determination that the motion to reconsider should itself be granted on its merits"]; *In re Marriage of Spector* (2018) 24 Cal.App.5th 201, 214 [trial court's reconsideration of prior order was proper where "there ha[d] been no *additional findings or new evidence presented whatsoever*"]; *In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1469–1470 [trial court in *Barthold* "proper[ly] . . . limited itself to changing its mind based on the evidence submitted in connection with the wife's original motion"].) In *Cox v. Bonni* (2018) 30 Cal.App.5th 287, 312–313, this court concluded that the trial court had acted on its own motion where it was "evident the trial court did not reconsider its order based on any of the purportedly new law or facts in defendant's motion, but on its own realization that its earlier order was in error, as permitted by *Le Francois*."

2

Under this standard, the trial court did not act on its own motion in granting Centria's renewed motion. The trial court was not merely prompted to reconsider its prior ruling by the renewed motion. Rather, it relied on documents filed with the renewed motion, namely the 2014 dealer agreement that contained the same forum selection clause as the 2005 dealer agreement and the declaration of Craig Laramie, which properly authenticated the 2005 dealer agreement. The court also expressly agreed with arguments raised by Centria in the renewed motion. In other words, the record demonstrates that the trial court determined that Centria's renewed motion should be granted *on its merits*, not based on a realization that its original ruling was erroneous. Indeed, there does not appear to be any dispute that Centria's original motion did not properly authenticate the 2005 dealer agreement.

Centria argues that the court can sidestep consideration of section 1008 entirely by concluding that the court acted on its own motion pursuant to section 410.30. Section 410.30, subdivision (a) provides that "[w]hen a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

Centria relies on *Williamson v. Mazda Motor of America, Inc.* (2012) 212 Cal.App.4th 449 (*Williamson*) for the proposition that a court can properly grant a renewed motion that does not comply with section 1008 pursuant to section 410.30. In *Williamson*, the defendants moved for reconsideration of a forum non conveniens ruling when the case was assigned to a new judge, arguing that "even absent grounds for reconsideration of

3

the prior order under section 1008, [the new judge] could rule on the renewed motion under section 410.30." (*Id.* at p. 452.)  The Court of Appeal agreed.  It concluded that *Le Francois* and *Barthold* did not limit the trial court's authority because neither of those decisions addressed section 410.30.  (*Id.* at p. 453.)  Instead, the court cited *Britton v. Dallas Airmotive, Inc.* (2007) 153 Cal.App.4th 127 (*Britton*) for the proposition that a trial court has independent authority under section 410.30 "to determine whether California is a convenient forum even if a party's forum non conveniens motion does not otherwise satisfy the requirements of section 1008 for reconsideration of a prior order or renewal of an earlier motion." (*Williamson*, at p. 454.)  Although the trial court had granted the defendants' motion, the Court of Appeal concluded that the trial court judge had acted under her "authority to reconsider on her own motion whether California was a convenient forum." (*Id.* at p. 455.)

The issue on appeal in *Britton* was whether the forum non conveniens motion was timely, not whether a renewed motion under section 410.30 is subject to the requirements of section 1008.  The initial motion in *Britton* was filed within the time allowed under section 418.10, subdivision (a),[2] and the renewed motion was filed almost a year after most defendants answered. (*Britton, supra,* 153 Cal.App.4th at p. 132.)  The trial court granted the motion, relying on its authority under section 410.30,

---

[2] Section 418.10, subdivision (a) provides that " '[a] defendant, on or before the last day of his or her time to plead or within any further time that the court may for good cause allow, may serve and file a notice of motion . . . (2) To stay or dismiss the action on the ground of inconvenient forum.' " (*Britton, supra,* 153 Cal.App.4th at p. 132.)

4

and "specified that it was considering the issue on its own merits in response to plaintiffs' contention that the renewed motion was not a proper motion for reconsideration under section 1008." (*Ibid.*, fn. 2.) This lone reference to section 1008 in a footnote of the opinion suggests that the issue was not litigated on appeal. The Court of Appeal "construe[d] the provisions of sections 418.10 and 410.30, both relating to forum non conveniens motions, in harmony" and concluded that 418.10 specifies the procedure before a defendant has appeared whereas "[s]ection 410.30 applies after a defendant has appeared." (*Id.* at p. 134.)

R&J argues that the *Williamson* court's conclusion that a trial court may dismiss or stay an action on forum non conveniens grounds in response to a motion that fails to satisfy section 1008 is incorrectly decided. R&J observes that the only authority *Williamson* cites for this proposition is *Britton*, which did not consider the relationship between section 410.30 and section 1008 or address the expansive language in section 1008, subdivision (e) expressly subjecting "all applications . . . for the renewal of a previous motion" to the requirements of section 1008. I agree that *Williamson* is unpersuasive for the following reasons.

First, the *Williamson* court's conclusion that the trial court acted on its own motion when it granted a motion by a party appears contrary to the facts and the law. There is no basis to conclude that the Legislature intended that a stay or dismissal on the trial court's "own motion" encompasses an order made in response to and in reliance on a renewed motion or motion for reconsideration by a party, as happened here and in *Williamson*. The statute, which allows the court to stay or dismiss an action "upon motion of a party *or* its own motion," would be redundant if

5

the latter encompassed the former.  (§ 410.30, subd. (a), italics added.)  Further, such a reading is inconsistent with the Supreme Court's interpretation of actions taken on a trial court's own motion under the exception to section 1008 set forth in *Le Francois*.  It is suggested that the Supreme Court's statement that, when reconsidering a prior ruling, "[i]t should not matter whether the 'judge has an unprovoked flash of understanding in the middle of the night' [citation] or acts in response to a party's suggestion" means that a trial court acts on its own motion when it decides to grant a renewed motion containing new evidence.  (*Le Francois*, *supra*, 35 Cal.4th at p. 1108, quoting *Remsen v. Lavacot* (2001) 87 Cal.App.4th 421, 427.)  However, this claim is undermined elsewhere in *Le Francois*.  The Supreme Court expressly "agree[d] with the court in *Kerns v. CSE Ins. Group*[ (2003) 106 Cal.App.4th 368, 389], that 'by eliminating the distinction between a trial court's action taken sua sponte and that made in response to a litigant's motion, the more recent cases such as *Remsen* . . . go too far toward eviscerating the clear jurisdictional language of section 1008, essentially rendering the provisions of the statute meaningless.' "  (*Le Francois*, at p. 1104.)  The Supreme Court disagreed with the *Remsen* court's statements that whether reconsideration is granted on the court's own motion or in response to a party's motion is " 'a distinction without a difference' " and ' "constitutionally immaterial.' "  (*Id.* at p. 1101, quoting *Remsen*, at p. 427; *Le Francois*, at pp. 1104, 1107, fn. 5.)  Instead, the high court "believe[d] . . . that the Legislature intended this to be a distinction *with* a difference." (*Le Francois*, at p. 1108.)

As discussed above, following *Le Francois*, appellate courts have concluded that whether a trial court is acting on its own

6

motion in reconsidering a prior order depends on whether the court relies on new law or evidence that was not present in the original motion.  (E.g., *Barthold*, *supra*, 158 Cal.App.4th at p. 1314.)  This is consistent with the Supreme Court's statement in *Le Francois* that "[i]f a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief," while also recognizing that granting a party's motion and acting on the court's own motion is "a distinction *with* a difference."  (*Le Francois*, *supra*, 35 Cal.4th at p. 1108.)  If a trial court realizes that it misinterpreted the law or failed to appreciate the import of evidence presented with the original motion, the court has authority to remedy its errors.  In contrast, when a party has failed to provide relevant evidence or to raise a relevant legal theory in its original motion, any error is the party's, not the court's.  In other words, although section 1008 "do[es] not limit the court's ability, on its own motion, to reconsider its prior interim orders *so it may correct its own errors*" (*id.* at p. 1107, italics added), a court is not correcting its own errors when it overturns its prior ruling based on evidence or law that was not before it at the time of the original motion.  Thus, while a ruling on the court's "own motion" need not be strictly sua sponte, I disagree that the "usual and ordinary meaning" of "own motion" includes when a court rules in reliance on new evidence or law in a party's motion that the court would not be aware of but for the motion.  (*Green v. State of California* (2007) 42 Cal.4th 254, 260.)  Rather, *Le Francois* and its progeny suggest that a workable test for whether a trial court ruled on its own motion is whether the court *could have* issued the same ruling sua sponte, even if it did not actually do so.  To expand the meaning of "own motion" any

7

further would not effectuate its ordinary meaning but would render it meaningless.

Second, the Courts of Appeal in *Britton* and *Williamson* did not analyze whether and how section 1008 interacts with section 410.30. Considering that the express language in section 1008, subdivision (e) provides that the requirements of the section apply to *all* renewed motions, the *Williamson* court's conclusory assertion that *Le Francois* and *Barthold* were inapplicable because they did not concern a motion made under section 410.30 is unconvincing. (*Williamson*, *supra*, 212 Cal.App.4th at p. 453.) Unless one is willing to disregard the express and jurisdictional language of section 1008, subdivision (e), I do not believe one can properly conclude that a trial court acting in response to and reliance on a renewed motion made under section 410.30, as the trial court did here, need not comply with section 1008 without considering how the two statutes interact.

*Even Zohar*, *supra*, 61 Cal.4th 830, which was decided after *Williamson*, supports that the determination of whether section 1008 applies to a given statute requires an examination of the language and purposes of both statutes. In that case, the Supreme Court considered whether section 1008 governs renewed applications under section 473, subdivision (b) for relief from default. (*Id.* at p. 837.) After comparing the legislative purposes of both statutes, the Supreme Court concluded that section 1008 governs motions under section 473. The Supreme Court concluded that "[s]ection 1008 expressly applies to *all renewed applications for orders the court has previously refused*" and that "no language in section 473(b) purports to exempt applications for relief from default from the requirements of section 1008." (*Id.* at pp. 840–841, italics added.) In other words, "section 1008 does

not restrict initial applications for relief from default under section 473(b) in any way, nor does section 473(b) purport to authorize unlimited repetitions of the same motion." (*Id.* at p. 841.) This interpretation "gives full effect to all provisions of both," which is "strongly preferred." (*Ibid.*)

Following this methodology, I perceive no conflict between the purposes or language of sections 410.30 and 1008. "The question whether section 1008 governs" motions under section 410.30 "is one of law" that is considered de novo. (*Even Zohar*, *supra*, 61 Cal.4th at p. 837.) " 'Our fundamental task in construing' sections [410.30] and 1008, or any legislative enactment, 'is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " (*Ibid.*)

"The Legislature codified the doctrine of forum non conveniens in 1969 by enacting section 410.30." (*Global Financial Distributors Inc. v. Superior Court* (2019) 35 Cal.App.5th 179, 190.) It was amended in 1972 to add subdivision (b), which provides that section 418.10 does "not apply to a motion to stay or dismiss by a defendant who has made a general appearance." (Assem. Com. on Judiciary, com. on Sen. Bill No. 573 (1972 Reg. Sess.) July 3, 1972, p. 1.) The purpose of section 1008 is to "conserve judicial resources by constraining litigants who would endlessly bring the same motions over and over," and is "expressly jurisdictional" to "state that purpose strongly." (*Even Zohar*, *supra*, 61 Cal.4th at pp. 839–840.)

"Section 1008 expressly applies to all renewed applications for orders the court has previously refused" and nothing in section 410.30 purports to exempt it from the requirements of section 1008. (*Even Zohar*, *supra*, 61 Cal.4th at pp. 840–841.) The purpose of section 410.30 was to codify the forum non

conveniens doctrine and to make clear that a party can move to dismiss or stay on forum non conveniens grounds even after making a general appearance in the case, notwithstanding the provisions of section 418.10.  If the Legislature also intended that section 410.30 authorize a court to grant repeated motions notwithstanding section 1008, it "knew well how to express that intention."  (*Id.* at p. 841.)  It has not done so.

Thus, a court granting a renewed motion made by a party under section 410.30 is subject to the requirements of section 1008.  In other words, a trial court does not have independent authority under section 410.30 to grant a renewed motion to stay or dismiss that fails to satisfy the requirements of section 1008, but it may grant a stay or dismissal on its own motion (i.e., sua sponte or in response to a party's suggestion or motion, so long as the court is correcting "its own errors" [*Le Francois*, *supra*, 35 Cal.4th at p. 1107; *Barthold*, *supra*, 158 Cal.App.4th at pp. 1308, 1314]), pursuant to the language of section 410.30 and to the *Le Francois* exception to section 1008.  This interpretation "gives full effect to all provisions of both" statutes, which is "strongly preferred."  (*Even Zohar*, *supra*, 61 Cal.4th at p. 841.)

## B.     The trial court did not have inherent authority to consider the renewed motion.

As discussed above, there is no basis in the record to conclude that the trial court "change[d] [its] ruling *based on the evidence originally submitted.*"  (*Barthold*, *supra*, 158 Cal.App.4th at p. 1314.)  Thus, the exception to section 1008 set forth in *Le Francois*—the sole exception recognized by the Supreme Court (*Even Zohar, supra*, 61 Cal.4th at p. 836)—does not apply.

10

Nevertheless, Centria contends that the restrictions set forth in *Le Francois* are "immaterial" because "section 1008 does not limit a court's ability to entertain a renewed motion when the original motion was never decided on the merits." Centria relies on *Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th l007 (*Farber*) for this proposition. The trial court, also relying on *Farber*, similarly asserted that "it has inherent discretion to consider a renewed motion, without requiring new facts or circumstances, where the initial motion was not considered on the merits but denied on curable grounds."

However, by its own reasoning, *Farber* does not establish an independent exception to section 1008. In *Farber*, the plaintiff argued that the trial court improperly awarded fees where it initially denied the defendant's motion and its second motion "did not state sufficient grounds to permit renewal of the failed effort" under section 1008. (*Farber*, *supra*, 141 Cal.App.4th at p. 1014.) The trial court had denied the first fee motion " 'without prejudice on the grounds that Moving Party did not supply the court with sufficient information to determine whether the fees were reasonable and necessary.' " (*Ibid.*) The Court of Appeal explained that, in *Le Francois*, the Supreme Court held "that . . . section 1008 prohibits a party from filing repetitive motions for the same relief, but a court may, on its own motion, reconsider a prior interim ruling it believes to be mistaken." (*Farber*, at p. 1015.) When a court denies a motion without prejudice, as the trial court did in *Farber*, it "impliedly invites the moving party to renew the motion at a later date, when he can correct the deficiency that led to the denial." (*Ibid.*) The trial court's reconsideration was "essentially on its own motion," and thus

11

was exempt from the requirements of section 1008 under *Le Francois*. (*Ibid.*)

On appeal, the parties dispute whether the court's original ruling was with or without prejudice and whether it was made solely on procedural grounds. However, in determining whether the trial court's order was consistent with *Le Francois*, the pertinent inquiry is whether the trial court somehow "indicated it wanted to reconsider" the issue or "impliedly invite[d] the moving party to renew the motion at a later date." (*Farber*, *supra*, 141 Cal.App.4th at p. 1015.)

The record here does not support that the trial court invited Centria to resubmit its motion. The trial court rejected Centria's request for a continuance of the hearing to allow Centria to properly authenticate the evidence. When Centria's attorney stated that he understood the court's order to be without prejudice, the trial court stated: "It's not without prejudice. It's my ruling." The trial court's order on the original motion was silent as to the order's effect and did not encourage Centria to refile. Thus, there was no statement here comparable to the unambiguous statement in *Farber* that the trial court's order was without prejudice. (*Farber*, *supra*, 141 Cal.App.4th at p. 1014.) To conclude that the court impliedly invited Centria to renew its motion in this case would render section 1008 a nullity.

The trial court therefore erred when it concluded that compliance with section 1008 was not required under *Farber*.[3]

_____

[3] Centria argues that, by granting the renewed motion, the trial court was essentially reconsidering and granting the continuance that it had initially denied, and thus acted on its own motion. Even accepting that the trial court reconsidered its

12

## C. Centria's motion was not based on new or different facts as required by section 1008.

The trial court also concluded that Centria's renewed motion satisfied the requirements of section 1008, subdivision (b). Section 1008 requires a party renewing a motion to raise "new or different facts, circumstances, or law." (§ 1008, subd. (b).) Case law has imposed the additional requirement that the party filing the renewed motion provide a satisfactory explanation for not having produced the new facts at an earlier time. (See *Baldwin v. Home Sav. of America* (1997) 59 Cal.App.4th 1192, 1198–1199.) A trial court's ruling on a motion under section 1008 is reviewed for abuse of discretion. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.)

R&J argues that none of the facts on which the trial court relied on reconsideration were "new or different" for purposes of section 1008, subdivision (b) because they were known to Centria at the time of its original motion. R&J further asserts that there was no satisfactory explanation for Centria's failure to present these facts with its original motion. I agree.

Courts have concluded that "[f]acts of which a party seeking reconsideration was aware at the time of the original ruling are not 'new or different facts,' as would support a trial court's grant of reconsideration" under section 1008. (*People v.*

denial of the continuance, it simultaneously granted Centria's renewed motion to dismiss based on evidence that Centria submitted to the trial court before the trial court ever indicated that it was reconsidering the denial of the continuance. In other words, the trial court did not "invite" Centria to submit the evidence on which the trial court relied in granting the motion to dismiss until *after* that evidence was already before it.

13

*Safety National Casualty Corp.* (2010) 186 Cal.App.4th 959, 974; accord, *In re Marriage of Herr*, *supra*, 174 Cal.App.4th at p. 1468 ["facts of which the party seeking reconsideration was aware at the time of the original ruling are not 'new or different' "]; *Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1468 [motion for reconsideration was properly denied where it was based on evidence that "could have been presented with the original motion"].) Courts have similarly rejected the argument that law not previously presented but available at the time of the original motion is new or different for purposes of section 1008. (See *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 47 [moving party has "responsibility to advance all correct legal theories . . . in their original motion, so as not to burden the trial court with repeated motions for the same relief"]; accord, *Baldwin v. Home Sav. of America*, *supra*, 59 Cal.App.4th at pp. 1196–1197 [newly presented decision was insufficient to support reconsideration because it "issued in 1994 and could therefore have been provided the trial court prior to its initial ruling"].)

Centria does not identify any law to the contrary, but instead argues that "[t]here is no dispute that Centria presented new or different facts or circumstances." R&J's opening brief contains no such concession; rather, R&J argues that the evidence was known to Centria at the time of the original motion and thus was not "new or different" under section 1008. I agree. At the time of the original motion, Centria was or should have been aware of the 2005 dealer agreement, the 2014 dealer agreement, and the 2014 purchase acknowledgments, yet it only submitted the 2005 dealer agreement without proper authentication. The circumstances here are therefore

14

comparable to those present in *New York Times Co. v. Superior Court, supra,* 135 Cal.App.4th 206, in which Division Four of this District held that the trial court had abused its discretion in granting a motion for reconsideration of the court's order on summary judgment where the evidence was available to the moving party "throughout the discovery process and was easily obtainable." (*Id.* at p. 213.)

Thus, the trial court abused its discretion in concluding that evidence undisputedly within Centria's possession at the time of the original motion was new or different as required by section 1008, subdivision (b).

Although I need proceed no further, Centria also failed to provide an adequate explanation for its failure to provide the additional evidence sooner. A party's belief that evidence obtainable at the time of the original motion was not relevant is not a satisfactory explanation. (See *New York Times Co. v. Superior Court*, *supra*, 135 Cal.App.4th at p. 213; accord, *In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 81 [claim that party seeking reconsideration "did not understand the import" of evidence in her possession was "not a satisfactory explanation for her failure to submit the evidence or law earlier"]; *Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 692, fn. 6 [defendant's belief that evidence was not necessary at time of first hearing was a "patently insufficient" explanation for failure to present it sooner], disapproved of on another ground by *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53; *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 687 [rejecting as inadequate counsel's explanation that " 'important facts and evidence' " were not presented earlier " '[d]ue to an inadvertent oversight' "].)

15

The trial court credited that Centria was prejudiced by the limited time it was given to reply and found that "the evidence submitted suggests that [Centria] did not anticipate [R&J]'s objection to the validity and existence of the 2005 dealer agreement." However, the 2005 dealer agreement was central to Centria's forum non conveniens argument and Centria therefore had every reason to ensure that it was admissible in the first instance. There is no basis in the record to conclude that Centria could not have properly authenticated the 2005 dealer agreement in the five weeks between when R&J served the amended complaint and its response was due. The trial court did not hold Centria to the "strict requirement of diligence" necessary "to show a satisfactory explanation for failing to provide the evidence earlier." (*Garcia v. Hejmadi*, *supra*, 58 Cal.App.4th at p. 690.)

Centria also argues that it was unable to discern the agreements underlying R&J's claim until its opposition to the renewed motion, in which R&J stated that its cause of action "stemmed from its purchase order in 2014 and not from a 2005 or 2014 dealer agreement." However, the FAC alleged that R&J issued a purchase order to ASI in April 2014, that ASI and Centria "entered into a written contract in connection with [R&J's] aforementioned purchase order," and that this agreement was "made for [R&J's] benefit." Similarly, R&J's opposition to the initial motion stated that "R&J alleged that Centria and ASI entered into an agreement in 2014, in which Centria would manufacture and coat specific materials for installation for a public works project at the Port of Long Beach for the benefit of R&J" and that "Centria's agreement to fabricate the materials and provide the warranties, as required by the project's specifications, would not have materialized without R&J's

16

purchase order for the same." Thus, R&J alleged and argued from the outset that the agreement at issue was a contract between ASI and Centria that arose out of R&J's purchase order in 2014. (Cf. *New York Times Co. v. Superior Court*, *supra*, 135 Cal.App.4th at p. 214 [court abused its discretion in granting reconsideration motion because moving party gave no satisfactory explanation for its failure to present evidence sooner where "[i]t should have been apparent . . . that [the issue] would play a central role in the case"].)

Because section 1008 is "expressly jurisdictional" in nature (*Even Zohar*, *supra*, 61 Cal.4th at p. 840), the court's error was not merely procedural. (See *In re Marriage of Kent* (2019) 35 Cal.App.5th 487, 496 [court's consideration of request "was an act in excess of the California court's jurisdiction—i.e., not merely a procedural error, but a violation of a clear restriction or limitation on the court's power to act" and was reversible without showing of prejudicial error].) I would therefore vacate the judgment of dismissal and reverse the order granting the renewed motion. (See *New York Times Co. v. Superior Court*, *supra*, 135 Cal.App.4th at pp. 215–216 [directing trial court to vacate order granting motion for reconsideration and corresponding denial of motion for summary judgment where "trial court abused its discretion in granting the motion for reconsideration"]; *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 670–672 [reversing trial court's order where it abused its discretion in granting relief under section 1008]; *Garcia v. Hejmadi*, *supra*, 58 Cal.App.4th at p. 691 [reversing judgment where trial court "lacked jurisdiction to

17

reconsider the grant of summary judgment, enter a new order and proceed with trial"].)


CHANEY, J.